UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **FEMHEALTH USA, INC., d/b/a CARAFEM,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**RICKEY NELSON WILLIAMS, JR.; BEVELYN Z. WILLIAMS; EDMEE CHAVANNES; OPERATION SAVE AMERICA; JASON STORMS; CHESTER GALLAGHER; MATTHEW BROCK; COLEMAN BOYD; FRANK LINAM; BRENT BUCKLEY; and AJ HURLEY;**<br><br>    **Defendant.** | Civil Action No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff FemHealth USA, Inc., doing business as carafem ("carafem"), moves this court for a temporary restraining order ("TRO") to prevent irreparable harm to itself and its patients arising from defendants' violations of the Freedom to Access to Clinic Entrances Act of 1994 (the "FACE Act"). In the wake of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), carafem has been the frequent target of anti-abortion activists who have violated state laws against trespass in their attempts to forcibly enter the health center, falsely claimed carafem is unlawfully providing abortion care, and have admitted that they intend to escalate their actions against carafem. In the last week, protests have escalated with coordinated and large-scale demonstrations at carafem. Activists have taken coordinated action to trespass onto private property, intimidate and obstruct patients from accessing the facility, and make threats against employees, patients, and security personnel associated with carafem.

1

Defendants in this action, Rickey Nelson Williams, Jr., Bevelyn Williams, Edmee Chavannes, Jason Storms, Matthew Brock, Chet Gallagher, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, AJ Hurley, and others members and affiliates of Operation Save America ("OSA"), are among those activists. On July 26 and July 28, 2022, defendants (one of whom was armed), intentionally interfered with individuals who have sought to receive and provide reproductive health services at carafem by physically obstructing the clinic entrance, attempting to gain entry into the clinic using false pretenses, and intimidating the clinic's staff. Defendants have made clear that they intend to intensify their assault on carafem as soon as they are able to do so.

## STATEMENT OF FACTS[1]

Carafem is a 501(c)(3) nonprofit organization providing reproductive health services. Carafem operates a network of reproductive health centers, including one in Mount Juliet, Tennessee, which provide information and low-cost options for people seeking abortion care, in addition to most methods of birth control and testing for sexually-transmitted infections.

Operation Save America ("OSA") is an anti-abortion activist group that is currently holding its "Foundations of Freedom" national event in Nashville, Tennessee.[2] Defendants Jason Storms and Chet Gallagher are leaders in the organization.[3] As a part of the event, OSA has staged multiple gatherings at healthcare facilities, including carafem, throughout the week. (*See* Decl. of Michelle Davidson ("Davidson Decl."), Paras. 3-5; Decl. of Pat Wheeler ("Wheeler Decl."), Paras. 2-4.) These demonstrations have escalated over time.

---

[1] The facts supporting plaintiffs' request for injunctive relief are set out more fully in the Complaint and attached declarations.
[2] https://www.operationsaveamerica.org/event/osa-national-event-faith-and-freedom-nashville-tennessee-july-23rd-30th-details-tbd/, last accessed July 29, 2022.
[3] https://www.operationsaveamerica.org/about-us/national-director/, last accessed July 29, 2022.

2

On July 26, 2022, a group of men from OSA, led by Jason Storms, Chet Gallagher, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, and AJ Hurley approached the building, crossed the property line, and gathered at the front doors of the multi-tenant facility where carafem operates. (Davidson Decl. Paras. 7-10; Wheeler Decl. 7-13.) Building Security officials blocked the men from entering the front doors and waited for law enforcement assistance. (Wheeler Decl. Paras. 8-9.) Clinic personnel immediately took patients and staff into lock-down procedures, where they were moved to safe and secure locations. Staff and patients remained on lockdown for approximately thirty minutes. (Wheeler Decl. Para. 10.) Defendants Jason Storms and Chet Gallagher refused to move from the front door and were in front of the doors for several minutes. Law enforcement eventually convinced the men to leave the property. (Davidson Decl. Para. 10; Wheeler Decl. Paras. 9-13.)

Mt. Juliet Deputy Police Chief reported to carafem staff that the OSA members and affiliates with whom he spoke stated that they intended to return to the medical building each day for the remainder of the week, planned to "escalate" activities on Friday, July 29, 2022, and planned to "fill the hallways" of the clinic "sometime soon" and that they "have men out here who are willing to do what needs to be done." (Davidson Decl. paras. 11, 14.)

The next day, July 27, 2022, 30-35 individuals who are, on information and belief, members or affiliates of OSA, arrived at the medical building. Like the previous day, these individuals began protesting on the sidewalks outside the medical building property with graphic signs and megaphones. (Davidson Decl. Para. 13.) They remained at carafem until they made their way to a subsequent demonstration taking place at Nashville City Hall. There, the members of OSA were joined by Bevelyn Beatty Williams, her husband, Rickey Williams, Jr., and their associate Edmee Chavannes. (Davidson Decl. Para. 15.)

3

On July 28, 2022, a large group of OSA members gathered near carafem. Approximately 50-60 protesters lined the sidewalks and played a crying baby over large speakers that were aimed at the facility. Patients had a difficult time hearing and understanding carafem staff and were visibly upset by the noise. (Davidson Decl. Para. 17; Wheeler Decl. Para. 15.) At approximately 11:20am, Bevelyn Williams, Rickey Williams, Jr., and Edmee Chavannes came onto the property, entered the building, and gathered at the front door of carafem. (Davidson Decl. Para. 18; Wheeler Decl. Para. 16.)

Bevelyn Williams, Rickey Williams, Jr. and Chavannes first attempted to gain access by falsely stating that they were seeking an appointment. When denied entrance, Defendant Williams stated on video, "Now either they gonna let us in or we take this whole building down. It's up to them." She then narrated for the camera, "We are trying to see if they let us into the office, into carafem. But if not, we are just going to terrorize this whole building."[4] (Wheeler Decl. Para. 18.)

Again, carafem staff urgently placed all patients and staff into lock-down procedures. (Wheeler Decl. Para. 19.) Mt. Juliet police attempted to remove the individuals for several minutes, while they continued to block the clinic doors. During this time, a carafem patient was unable to enter the clinic suite. She reported to clinic staff that when Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes were in front of the clinic entrance, she had been hiding down the second-floor hallway, around a corner so as to remain unseen. (Wheeler Decl. Para. 20-21.)

Several hours later on July 28, 2022, Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes attempted to enter another reproductive health facility and were arrested. When being placed under arrest by Metro Nashville Police personnel, Defendant Rickey Williams,

---

[4] https://twitter.com/MsBevelynBeatty/status/1552690559722016769.

4

Case 3:22-cv-00565   Document 3   Filed 07/29/22   Page 4 of 11 PageID #: 39

Jr. was found to have a firearm concealed in his waistband. (Davidson Decl. Para. 19.) The three individuals were arrested, booked, and released on bond that same day.[5]

## ARGUMENT

Plaintiff seeks an emergency TRO to prevent irreparable harm to itself and its patients, pursuant to the FACE Act. *See* 18 U.S.C. § 248 (c)(1)(A). Four factors govern this motion, and all weigh overwhelmingly in carafem's favor. The Court must consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015) (internal quotation marks omitted).

These factors are "to be balanced" and "are not meant to be rigid and unbending requirements." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (internal quotation marks omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Ne. Ohio Coal. For Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (internal quotation marks omitted).

As set forth below, carafem readily satisfies this standard. Carafem is exceptionally likely to prevail on the merits because (i) Defendants' acts, described in sworn statements of parties who witnessed them and documented on Defendants' social media pages, constitute unambiguous

---

[5] https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300252%5E5594061%5ECJIS/BEVELYN%5EWILLIAMS%5E03151991%5E609870/;
https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300260%5E5594085%5ECJIS/RICKEY%5EWILLIAMS%5E02131989%5E609871;
https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300246%5E5594039%5ECJIS/EDMEE%5ECHAVANNES%5E01201981%5E609869/, last accessed July 29, 2022.

violations of the FACE Act; (ii) Defendants' brazen interference with persons receiving and providing reproductive health services has already inflicted severe and irreparable harm on carafem and its patients and will continue to do so unless and until it is enjoined; (iii) the balance of hardships weighs decisively in carafem's favor; and (iv) the public interest would be served by enjoining Defendants' unabashed violations federal law.

## I. Plaintiff is Likely to Succeed on the Merits of Its Claims

Defendants' physical obstruction of the entrance to carafem, as well as its intimidation of carafem's staff and patients, is a per se violation of the FACE Act, which authorizes a private cause of action specifically addressing the need to enjoin the kind of intimidation, force and threats carafem has faced from Defendants. The FACE Act provides that "[w]hoever by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been … obtaining or providing reproductive health services" shall be subject to criminal and civil penalties. 18 USC § 248(a)(1). "[P]hysical obstruction is defined as "rendering impassable ingress to or egress from a facility that provides reproductive health services … or rendering passage to or from such a facility … unreasonably difficult or hazardous"; "interfere with" is defined as "restrict[ing] a person's freedom of movement"; and "intimidate" is defined as "plac[ing] a person in reasonable apprehension of bodily harm to him- or herself or to another." *Id.* at 248(e)(2)-(4).

If an individual makes entering or exiting a reproductive health facility unreasonably difficult, a court will find a FACE Act violation. This is true even if the obstruction is only temporary. *New York v. Cain*, 418 F. Supp. 2d 457, 480 n.18 (S.D.N.Y. 2006). "[A]s long as access is made 'unreasonably difficult or hazardous,' it is not necessary to establish that there was absolutely no way to enter an abortion facility in order to prove a violation of the Act." *U.S. v.*

6

*Gregg*, 32 F. Supp. 2d 151, 156 (D.N.J. 1998), *aff'd* 226 F.3d 253 (3d Cir. 2000). While physical obstruction may involve the use of one's body to prevent access to a clinic's entrance, the FACE Act sweeps more broadly, "prohibit[ing] *any act* rendering passage to the facility unreasonably difficult." *U.S. v Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) (emphasis added).

Defendants Storms and Gallagher led a group of men from OSA, including Matthew Brock, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, and AJ Hurley to trespass onto private property and block the entrance to the facility in an effort to prevent patients and staff from entering. Security officials blocked the men from entering the front doors and waited for law enforcement assistance. Defendants Jason Storms and Chet Gallagher refused to move from the front door and were in front of the doors for several minutes. Law enforcement eventually convinced the men to leave the property, whereupon they resumed protesting with graphic signs and megaphones. (Davidson Decl. Paras. 7-10; Wheeler Decl. 7-13.)

Two days later, a large group of OSA members and affiliates, including Defendants Bevelyn Williams, Rickey Williams, Jr., and Edmee Chavannes, reconvened their protest at carafem. At approximately 11:20am, Defendants Bevelyn Williams, Rickey Williams, Jr., and Edmee Chavannes came onto the property, entered the building, and gathered at the front door of carafem. They first attempted to gain access by falsely stating that they were seeking an appointment. When denied entrance, Defendant Williams stated on video, "Now either they gonna let us in or we take this whole building down. It's up to them." She then made her threats more explicit, stating, "We are trying to see if they let us into the office, into carafem. But if not, we are just going to terrorize this whole building."[6] (Davidson Decl. Paras. 17-19; Wheeler Decl. Para. 15-21.) Defendants' blatant attempts to block access to the clinic leaves no room for doubt that

---

[6] https://twitter.com/MsBevelynBeatty/status/1552690559722016769.

7

they intended to interfere with persons providing or obtaining reproductive health services. But even if that were not the case, the FACE Act is violated whenever a violator intends the *act* that makes passage into or out of the clinic unreasonably hazardous or outright impossible. *See Gregg*, 32 F. Supp. 2d at 156-57 ("For purposes of FACE, 'intent' means 'intending to perform the act and aware of the natural and probable consequences of it.'"). Defendants are, of course, free to peacefully convey their anti-abortion message, but when their conduct "ha[s] the effect of obstructing access to the facilities and making egress and ingress unreasonably difficult for patients," they have run afoul of the Act. *See N.Y. v Operation Rescue Nat'l*, 273 F.3d 184, 194 (2d Cir. 2001).

## II. Plaintiff's Staff and Patients Have Suffered and Will Suffer Immediate Irreparable Injury Absent Injunctive Relief

Because carafem is overwhelmingly likely to succeed on the merits of its claim that defendants have violated the FACE Act, and because defendants have professed their intention to continue to violate it, carafem arguably need not separately establish irreparable injury. As courts have held, a "statutory provision authorizing preliminary injunctive relief may be an adequate substitute for a finding of irreparable injury to the plaintiff." *U.S. v. Roach*, 947 F. Supp. 872, 877 (E.D. Pa. 1996) (citations omitted). Here, defendants plainly violated the FACE Act on both July 26 and 28, 2022, and have indicated that they intend to "escalate" their harassment campaign against carafem in the coming days. Thus, this Court should presume irreparable harm.

Even in the absence of such a presumption, defendants have clearly caused irreparable harm and have pledged to continue doing so. This past and future harm entitles carafem and its patients to a TRO. When "women [are] denied access" to reproductive health services, they "cannot be compensated by money damages; injunctive relief alone can assure them the clinics' availability." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989).

8

Patients have a right to seek reproductive health care, which necessitates "unimpeded access to [a] clinic by way of public streets and sidewalks." *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 372-373 (1997).

Defendants repeatedly obstructed the entrance, common areas, and suite doorway of carafem, making it inaccessible to patients during the relevant time period. In addition, Defendants threatening actions repeatedly caused carafem to initiate lock-down procedures for the safety of its staff and patients. This meant that patients, even inside the clinic, were facing delays in care and serious fear for their physical safety. (Davidson Decl. Para. 17-19; Wheeler Decl. Para. 15-21.) Statements obtained from clinic patients and staff confirm their inability to access the facility, imminent fear of physical danger, intimidation, and experience of threats to their personal safety. (Davidson Decl. Para. 20.)

During the obstruction and threatening actions of Defendants Williams and Chavannes, a carafem patient was unable to enter the clinic suite. She reported to clinic staff that when Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes were in front of the clinic entrance, she had been hiding down the second-floor hallway, around a corner so as to remain unseen. (Wheeler Decl. Para. 21.)

The patients and staff of carafem have experienced irreparable harm as a direct result of the actions of Defendants and will continue to experience harm if action is not taken.

### III. The Balance of Harms and Public Interest Strongly Favor Emergency Injunctive Relief

As set out above, carafem faces the imminent threat of defendants' continued harassment, which dramatically interferes with the ability of carafem's staff to provide reproductive health services and with the ability of carafem's patients to receive it, thereby working irreparable injury. In contrast, injunctive relief would impose no harm whatsoever on defendants. There is simply no

argument that defendants will be harmed if the Court enjoins them from violating federal and state law. Defendants will be free to exercise their First Amendment rights and to communicate their anti-abortion message—they simply will not be able forcibly deprive others of the ability to access medical care at carafem while doing so.

Moreover, defendants have made clear that their goal is to thwart the provision of abortion services at carafem. At present, abortion remains legal in Tennessee, albeit with severe restrictions. *See Memphis Ctr. for Reprod. Health v. Slatery*, No. 20-5969, 2022 WL 2570275, at *1 (6th Cir. June 28, 2022) (vacating preliminary injunction and permitting Tennessee's ban on abortions after six weeks of pregnancy to go into effect). Despite those restrictions, carafem has committed itself to ensuring that its patients have access to the abortion care they desire, within the confines of the law. Defendants' conduct would undermine even the diminished access to abortion that remains in Tennessee and would deprive carafem's patients of their ability to make personal health decisions of incalculable importance. "The public interest in preserving the status quo and in ensuring access to [reproductive] health care services while this case proceeds is strong." *Planned Parenthood Sw. Ohio Region v. Hodges*, 138 F. Supp. 3d 948, 961 (S.D. Ohio 2015).

### IV. Plaintiff Should Not be Required to Post a Bond

"[T]he rule in [the Sixth] circuit has long been that the district court possesses discretion over whether to require the posting of security" when issuing a preliminary injunction. *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing cases and affirming the district court's waiver of a bond); *see also Jeffreys v. My Friend's Place, Inc.*, 719 F. Supp. 639, 649 (M.D. Tenn. 1989) (issuing preliminary injunction without requiring the posting of security). Exercise of that discretion is particularly appropriate when, as here, issues of public concern or important federal rights are involved. *See Cont'l Oil Co. v. Frontier Ref Co.*,

10

Case 3:22-cv-00565   Document 3   Filed 07/29/22   Page 10 of 11 PageID #: 45

338 F.2d 780, 782 (10th Cir. 1964). Accordingly, if this Court enters a TRO, no bond should be required.

**CONCLUSION**

For the reasons set forth above, this Court should grant plaintiff's request for an emergency TRO and enjoin defendants and others acting in concert with them from using physical obstruction or intimidation to intentionally interfere with any person, or attempt to intentionally interfere with any person, because the person was or will be obtaining or providing reproductive health services at carafem.

Date: July 29, 2022

                                          Respectfully submitted,
                                          */s/ Sarah B. Miller*
                                          Sarah B. Miller
                                          Angela L. Bergman
                                          Allison Wiseman Acker
                                          **BASS, BERRY & SIMS PLC**
                                          150 Third Avenue South, Suite 2800
                                          Nashville, TN  37201
                                          (615) 742-6200
                                          (615) 742-6293 (facsimile)
                                          smiller@bassberry.com
                                          abergman@bassberry.com
                                          allison.acker@bassberry.com

                                          *Attorneys for Plaintiff*