UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| FEMHEALTH USA, INC., d/b/a CARAFEM,<br><br>                Plaintiff,<br><br>   v.<br><br>RICKEY NELSON WILLIAMS, JR.; BEVELYN Z. WILLIAMS; EDMEE CHAVANNES; OPERATION SAVE AMERICA; JASON STORMS; CHESTER GALLAGHER; MATTHEW BROCK; COLEMAN BOYD; FRANK LINAM; BRENT BUCKLEY; and AJ HURLEY;<br><br>                Defendant. | Civil Action No. 3:22-cv-00565 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff FemHealth USA, Inc., doing business as carafem ("carafem"), moves this Court for a preliminary injunction to prevent irreparable harm to itself and its patients arising from defendants' violations of the Freedom to Access to Clinic Entrances Act of 1994 (the "FACE Act"). In the wake of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), carafem has been the frequent target of anti-abortion activists who have violated state laws against trespass in their attempts to forcibly enter the health center, falsely claimed carafem is unlawfully providing abortion care, and admitted that they intend to continue their actions against carafem.

1

In late July, Defendants in this action, Rickey Nelson Williams, Jr., Bevelyn Williams, Edmee Chavannes, Jason Storms, Matthew Brock, Chet Gallagher, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, AJ Hurley, and others members and affiliates of Operation Save America ("OSA"), intentionally interfered with individuals who have sought to receive and provide reproductive health services at carafem by physically obstructing the clinic entrance, attempting to gain entry into the clinic using false pretenses, and intimidating the clinic's staff and patients. These actions caused carafem to seek and obtain a temporary restraining order on July 29, 2022 (Dkt. 9), which the Court extended on August 2, 2022 (Dkt. 11). Defendants have made clear that they intend to continue their assault on carafem in violation of the FACE Act, necessitating a preliminary injunction while this litigation is pending.

Specifically, carafem requests that the Court enjoin Defendants and others acting in concert with them from entering the building in which carafem is located, its parking lot, or the adjacent residential area, and from using sound amplification devices or otherwise intentionally making noise in the course of any protests that can be heard from within the carafem building.

## STATEMENT OF FACTS[1]

Plaintiff carafem is a 501(c)(3) nonprofit organization providing reproductive health services. Plaintiff operates a network of reproductive health centers, including one in Mount Juliet, Tennessee, which provide information and low-cost options for people seeking abortion care, most methods of birth control and testing for sexually-transmitted infections.

---

[1] The facts supporting Plaintiff's request for injunctive relief are set out more fully in the Complaint (Dkt. 1) and attached declarations, along with the Second Declaration of Michelle Davidson ("Davidson Suppl. Decl.") and the Declaration of Jane Doe filed contemporaneously herewith.

Operation Save America ("OSA") is an anti-abortion activist group whose members travel the country to interfere with the normal business operations of reproductive healthcare facilities.[2] OSA held its "Foundations of Freedom" national event in Nashville, Tennessee, during the week of July 25, 2022.[3] Defendants Jason Storms and Chet Gallagher are leaders in the organization.[4]

On July 25, 2022, OSA member Defendant AJ Hurley posted on Facebook OSA's plans for the event. (Davidson Suppl. Decl. ¶ 4.) Defendant Hurley indicated that the appropriate response to abortion is "rescue," and that "as amazing as sidewalk counseling is, it's not rescue. It's not what that [Bible] verse is commanding. *Rescue holds back someone from harming another. Rescue is risking your life to save someone.*" (*Id.* (emphasis added).) He responded to a subsequent comment stating that "[u]sing your body *to stop a clinic from functioning* is a nonviolent way of rescue." (*Id.* (emphasis added).)

Consistent with the plan laid out by Defendant Hurley, OSA staged multiple gatherings at Nashville-area reproductive healthcare facilities, including carafem, throughout the week. (*See* Decl. of Michelle Davidson ("Davidson Decl."), ¶¶ 3-5; Decl. of Pat Wheeler ("Wheeler Decl."), ¶¶ 2-4.) The demonstrations were not lawful; they violated the FACE Act by physically interfering with patients' access to reproductive health facilities and threatening and interfering with patients and staff providing those services. These protests also were not tethered to whether the

---

[2] Decl. of Michelle Davidson, Dkt No. 1, Ex. 2 at ¶¶ 3-4. OSA, acting under the name of its predecessor organization, Operation Rescue, previously has been found by courts to have violated the FACE Act multiple times. *See N.Y. ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 192 (2d Cir. 2001); *U.S. v. White*, et al., 893 F. Supp. 1423 (C.D. Cal. 1995); *U.S. v. Operation Rescue Nat'l*, 111 F. Supp. 2d 948 (S.D. Ohio 1999).

[3] Operation Save America, *OSA National Event "Foundations of Freedom,"* https://www.operationsaveamerica.org/event/osa-national-event-faith-and-freedom-nashville-tennessee-july-23rd-30th-details-tbd/, last accessed July 29, 2022.

[4] Operation Save America, *About Us*, https://www.operationsaveamerica.org/about-us/national-director/, last accessed July 29, 2022.

reproductive healthcare facility in question actually provided abortion care; OSA members staged multiple protests at Planned Parenthood's Nashville location despite the fact that, upon information and belief, it ceased providing abortion care on June 28, 2022, after the 6th Circuit U.S. Court of Appeals lifted an injunction on a Tennessee law banning abortions after around six weeks of gestation. (*See* Davidson Decl., ¶¶ 6, 19.)[5]

On July 26, 2022, an estimated 150 protesters gathered outside the carafem Mount Juliet clinic. (Declaration of Jane Doe ("Doe Decl.") ¶ 3.) The protesters held signs that, among other things, called carafem staff murderers. (*Id.*) These messages were interpreted as threatening and intimidating by carafem staff, who were directed to be "on high alert" throughout the day. (Doe Decl. ¶¶ 4-6.) For example, carafem adjusted its clinic staffing hours the morning of July 26, 2022, in order to open earlier and avoid staff possibly encountering protestors on their way into the clinic. (Doe Decl. ¶ 5.)

Led by Jason Storms, OSA members Chet Gallagher, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, and AJ Hurley, other members of the group approached the building, crossed the property line, and gathered at the front doors of the multi-tenant facility where carafem operates. (Davidson Decl. ¶¶ 7-10; Wheeler Decl. ¶¶ 7-13.) Building Security officials stopped the men from entering the building, at which point the men gathered in a semicircle around the front doors, effectively surrounding building security. (Davidson Suppl. Decl. ¶ 5 at Ex. B.) Clinic personnel immediately took patients and staff into lock-down procedures and moved them to safe and secure locations. (Doe Decl. ¶ 8.) The lockdown interrupted the medical care of three patients who were in the clinic at the time. (Doe Decl. ¶ 10.) Staff and patients remained on

---

[5] NASHVILLE POST, Planned Parenthood stops offering abortions in Tennessee, July 28, 2022, *available at* https://www.nashvillepost.com/business/health_care/planned-parenthood-stops-offering-abortions-in-tennessee/article_b621ee3a-f72d-11ec-b93e-ab5c54289cb8.html (last accessed August 9, 2022.)

lockdown for approximately thirty minutes. (Wheeler Decl. ¶ 10.) Defendants Jason Storms and Chet Gallagher refused to move from the front door and were in front of the doors for several minutes. When security personnel told the group to get off the property, they refused and one member of the group responded "no sir." (Davidson Suppl. Decl. ¶ 5.) The men stopped blocking the door and left the property only after the Mt. Juliet Police arrived on the scene and agreed to speak them further if they moved back onto public property. (Davidson Decl. ¶ 10; Wheeler Decl. ¶¶ 9-13.)

In those discussions with law enforcement after they left the building's private parking lot, Defendants repeatedly expressed that they were above the law, stating: "It really doesn't matter what men say"; "we got men out here who are willing to do what needs to be done"; "we have to obey God rather than men"; "we're going to be obedient to God's law, not man's"; and "we think [our action] is always lawful." (Davidson Suppl. Decl. ¶ 5.) OSA members and affiliates informed the Mt. Juliet Police that they intended to return to the medical building each day for the remainder of the week, planned to "escalate" activities on Friday, July 29, 2022, and planned to "fill the hallways" of the clinic "sometime soon" and that they "have men out here who are willing to do what needs to be done." (Davidson Decl. ¶¶ 11, 14.)

The next day, July 27, 2022, 30-35 individuals who are, on information and belief, members or affiliates of OSA, arrived at the medical building. Like the previous day, these individuals began protesting on the sidewalks outside the medical building property with graphic signs and megaphones. (Davidson Decl. ¶ 13.) The amplification was so loud that the protestors' broadcast intruded into patient rooms, where carafem staff were forced to yell over the threats and intimidation to complete patient care visits. (Doe Decl. ¶¶ 13-14.) The protestors remained at carafem until they made their way to a subsequent OSA demonstration taking place at Nashville

5

City Hall. There, they were joined by Bevelyn Beatty Williams, her husband, Rickey Williams, Jr., and their associate Edmee Chavannes. (Davidson Decl. ¶ 15.)

On July 28, 2022, a large group of OSA members gathered near carafem. Approximately 50-60 protesters lined the sidewalks and played a crying baby over large speakers that were aimed at the facility. Patients had a difficult time hearing and understanding carafem staff during their healthcare appointments and were visibly upset by the noise. (Davidson Decl. ¶ 17; Wheeler Decl. ¶ 15; Doe Decl. ¶ 15.) At approximately 11:20 am, Bevelyn Williams, Rickey Williams, Jr., and Edmee Chavannes came onto the property, entered the building, and gathered at the front door of carafem. (Davidson Decl. ¶ 18; Wheeler Decl. ¶ 16.) The Williamses and Chavannes first attempted to gain access by falsely stating that they were seeking an appointment. Although carafem usually accepts walk-ins for clinic visits, it was forced to deny requests for walk-in appointments, including Ms. Chavannes' request, due to security concerns arising from the unlawful FACE Act violations. (Doe Decl. ¶¶ 17-18.) When denied entrance, Defendant Williams stated on video, "Now either they [are] gonna let us in or we take this whole building down. It's up to them." (Wheeler Decl. ¶ 18.) She then narrated for the camera, "We are trying to see if they let us into the office, into carafem. But if not, we are just going to terrorize this whole building." (Davidson Decl. ¶ 18.) The Williamses and Chavannes proceeded to scream for approximately ten minutes. (Doe Decl. ¶ 19.)

Again, carafem staff urgently placed all patients and staff into lock-down procedures. (Wheeler Decl. ¶ 19.) During the lockdown, carafem staff and patients heard some Defendants screaming in the hallway and other Defendants yelling and broadcasting the sounds of babies' cries from outside, leading them to feel attacked from all sides. (Doe Decl. ¶ 21.) Mt. Juliet police attempted to remove the individuals for several minutes, while they continued to block the clinic

6

doors. During this time, a carafem patient was unable to enter the clinic suite. She reported to clinic staff that when Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes were in front of the clinic entrance, she had been hiding down the second-floor hallway, around a corner so as to remain unseen. (Wheeler Decl. ¶ 20-21.)

Several hours later on July 28, 2022, Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes attempted to enter another reproductive health facility, where they were arrested. When being placed under arrest by Metro Nashville Police personnel, Defendant Rickey Williams, Jr. was found to have a firearm concealed in his waistband. (Davidson Decl. ¶ 19.) The three individuals were arrested, booked, and released on bond that same day.[6]

Law enforcement has informed carafem staff that OSA is planning to occupy the hallway outside carafem before August 25, 2022. (Doe Decl. ¶ 24.) After Chief Judge Crenshaw issued the temporary restraining order in this case, Defendant Jason Storms made statements to the media that more OSA "activities" are planned for *after* August 25, 2022, the date on which carafem will no longer provide abortion services in accordance with Tennessee law. (Davidson Suppl. Decl. ¶ 7.) Other Defendants have made more specific comments indicating their belief that they are not required to obey the law of the "lesser magistrates" of this Court. (*Id.*)

---

[6] Criminal Court Clerk Case Search, results for Bevelyn Williams, https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300252%5E5594061%5ECJIS/BEVELYN%5EWILLIAMS%5E03151991%5E609870/, last accessed August 9, 2022; results for Rickey Williams, https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300260%5E5594085%5ECJIS/RICKEY%5EWILLIAMS%5E02131989%5E609871, last accessed August 9, 2022; results for Edmee Chavaness, https://sci.ccc.nashville.gov/Search/CaseSearchDetails/2300246%5E5594039%5ECJIS/EDMEE%5ECHAVANNES%5E01201981%5E609869/, last accessed August 9, 2022.

# ARGUMENT

Plaintiff seeks a preliminary injunction to prevent irreparable harm to itself, its staff and its patients, pursuant to the FACE Act. *See* 18 U.S.C. § 248 (c)(1)(A). Four factors govern this motion, and all weigh overwhelmingly in carafem's favor. The Court must consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015) (internal quotation marks omitted).

As set forth below, and as found by Chief Judge Crenshaw (*see* Dkt. 9 at ¶¶ 9-10), carafem readily satisfies this standard. Carafem is exceptionally likely to prevail on the merits because (i) Defendants' acts, described in sworn statements of parties who witnessed them and documented on Defendants' social media pages, constitute unambiguous violations of the FACE Act; (ii) Defendants' brazen interference with persons receiving and providing reproductive health services has already inflicted severe and irreparable harm on carafem and its patients and will continue to do so unless and until it is enjoined; (iii) the balance of hardships weighs decisively in carafem's favor; and (iv) the public interest would be served by enjoining Defendants' unabashed violations federal law.

### I. Plaintiff is Likely to Succeed on the Merits of Its Claims Because the FACE Act Expressly Prohibits the Conduct Defendants Have Engaged in and Will Continue to Engage in Absent Injunctive Relief.

#### A. *The FACE Act prohibits obstructing access to clinics and threatening or injuring clinic workers.*

The Freedom of Access to Clinic Entrances Act, known as the FACE Act, was enacted in 1994 to prevent exactly the kind of vigilantism perpetrated by Defendants. At the time leading up

to the Act, many opponents of the rights provided by *Roe v. Wade* would attempt to interfere, intimidate, or block those who attempted to exercise those rights at a reproductive health facility. Some of these opponents' actions were violent, including, for example, the murder of Dr. David Gunn.[7] Existing state laws prohibiting violence and intimidation were not effective in deterring such conduct and/or were not effectively enforced at a local level. The United States Congress stepped in to federalize the illegality of such conduct to improve deterrence and enforcement thereof, so that the right to access clinics that provide reproductive healthcare could be freely exercised by all citizens.[8] Accordingly, "FACE is not about regulating expressive conduct or protected speech, but about prohibiting violent, physically obstructive, and threatening acts that are outside the realm of the First Amendment protection, regardless of the message that may motivate them."[9]

> The FACE Act prohibits a person who:
>
> by force or threat of force **or** by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

---

[7] *See Kristine L. Sendek, "Face"-ing the Constitution: The Battle over the Freedom of Access to Clinic Entrances Shifts From Reproductive Health Facilities to the Federal Courts,* 46 Cath. U. L. Rev. 165, 174, *available at* https://core.ac.uk/download/pdf/232605588.pdf.

[8] *Id.* at 166 ("[FACE] is about providing citizens with the opportunity to freely enter a reproductive health clinic without fear of bodily harm or threats. FACE is a legislative response to 'the growing violence accompanying the debate over the continued legality and availability of abortion and other reproductive health services.'") (citing legislative history of the FACE Act).

[9] *Id.* at 240.

18 U.S.C. § 248(a)(1) (emphasis added). Both the FACE Act and courts have defined key phrases in this statutory language to further elucidate precisely what types of conduct are prohibited under the FACE Act, as set out in pertinent part below.

Under the FACE Act, a "threat of force" that constitutes a violation is "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002). Courts consider a non-exhaustive list of factors when determining whether statements constitute threats of force, including: the reaction of the recipient of the threat and of other listeners; whether the threat was conditional; whether the threat was communicated directly to its victim; whether the maker of the threat had made similar statements to the victim in the past; and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence. *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996), *cert. denied*, 519 U.S. 1043 (1996)) (citations omitted). In evaluating a threat of force, "context is critical." *Planned Parenthood of Columbia/Willamette*, 290 F.3d at 1071.

"Physical obstruction" can also violate the FACE Act. "Physical obstruction" is defined as "rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). Obstruction includes *"any act* rendering passage to the facility unreasonably difficult." *U.S. v Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) (emphasis added). Even a temporary obstruction violates the FACE Act. *New York v. Cain*, 418 F. Supp. 2d 457, 480 n.18 (S.D.N.Y. 2006). The plaintiff need not show that there was "absolutely no way to enter an abortion facility in order to

10

prove a violation of the Act." *U.S. v. Gregg*, 32 F. Supp. 2d 151, 156 (D.N.J. 1998), *aff'd* 226 F.3d 253 (3d Cir. 2000). Likewise, obstruction does not require "[e]ntry into or invasion of the clinic, physical injury to clinic clients or staff, or the non-occurrence of scheduled procedures or abortions." *Id.* at 156. Moreover, "the statute prohibits *attempted* obstruction, not just actual obstruction." *New York v. Griepp*, 991 F.3d 81, 106 (2d Cir. 2021) (original emphasis). Examples of "[a]cts of physical obstruction that are sufficient to create liability under FACE include obstructing or slowing access to driveways or parking lots; standing in front of pedestrians as they try to enter a clinic; blocking clinic doors by standing directly in front of them*;* blocking patients inside automobiles by standing close to car doors; and participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance." *N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006) (citations omitted); *see also, e.g.*, *United States v. Soderna,* 82 F.3d 1370, 1377 (7th Cir.1996), *cert. denied sub nom, Hatch v. United States,* 519 U.S. 1006 (1996) (even making access "unreasonably difficult" violates the FACE Act).

Finally, the statute defines "interfere with" as "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). "Intimidate" is defined as "to place a person in reasonable apprehension of bodily harm to him- or herself or to another." *Id.* § 248(e)(3).

As discussed in more detail below, Defendants have engaged, and will continue to engage, in each of these prohibited activities.

### B. Defendants' conduct is consistent with, or exceeds, the type of conduct courts have found to violate the FACE Act.

Defendants have unlawfully employed both "threat of force" and "physical obstruction" to intimidate reproductive health providers and patients and to interfere with the provision of medical care. They repeatedly obstructed the building entrance, common areas, and suite doorway of carafem, making the building inaccessible to patients during the relevant time-period. In addition,

11

Defendants' threatening actions (including blockading the clinic entrance and threatening to do so again) repeatedly caused carafem to initiate lock-down procedures for the safety of its staff and patients. This meant that patients, even inside the clinic, were facing delays in care and serious fear for their physical safety. (Davidson Decl. ¶ 17–19; Wheeler Decl. ¶ 15–21.) Statements obtained from clinic patients and staff confirm their inability to access the facility, imminent fear of physical danger, intimidation, and experience of threats to their personal safety. (Davidson Decl. ¶ 20; Doe Decl. ¶¶ 6-32.)

Defendants' threats and blatant attempts to block access to the clinic leave no room for doubt that they intended to interfere with persons providing or obtaining reproductive health services. In fact, Defendant AJ Hurley's social media post before Defendants' obstruction and harassment at carafem touted the merits of using one's body to stop a clinic from functioning. (Davidson Suppl. Decl. ¶ 4.) When defendants' conduct "ha[s] the effect of obstructing access to the facilities and making egress and ingress unreasonably difficult for patients," as it has here, they have run afoul of the Act. *See New York v Operation Rescue Nat'l*, 273 F.3d 184, 194 (2d Cir. 2001).

Indeed, Courts have found substantially similar conduct to that of Defendants to constitute a violation of the FACE Act. For example, courts have found that obstructions violate the Act where the conduct included, among other things, "standing near car doors so that patients cannot leave their cars . . . and standing directly in front of the Center door and refusing to move until a security guard approaches," *N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y.2006); "kneel[ing] and pray[ing] before a door that was mainly used as an emergency exit," *U.S. v. Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001); "obstruct[ing] driveway access, using [defendant's] body to slow moving cars and pushing literature and pamphlets through car windows," *N.Y. ex*

*rel. Spitzer v. Operation Rescue National,*[10] 273 F.3d 184, 195 (2d Cir. 2001); using signs to block two-thirds, but not all, of the sidewalk leading to the clinic, *New York v. Griepp*, 991 F.3d 81, 106 (2d Cir. 2021); and "tr[ying] to enter the clinic and ha[ving] to be forcibly kept out of the clinic by [clinic] staff and police," *U.S. v. Gregg*, 32 F.Supp.2d 151, 153 (D.N.J. 1998).

Likewise, Defendants' threats here are consistent with those previously found to have violated the FACE Act. *See, e.g.*, *U.S. v. Smith*, 1997 WL 809998, at *1 (6th Cir. 1997) (defendant threatened the plaintiff physician in violation of the Act by yelling "Your time has come," and "The time is near"); *People v. Kraeger*, 160 F.Supp.2d 360, 367 (N.D.N.Y. 2001) (leaving an unidentified box of pamphlets at clinic was sufficient to constitute threat where clinic had reasonable basis to fear the box contained a bomb); *New York v. Griepp*, 991 F.3d 81, 115 (2d Cir. 2021) (defendant threatened plaintiff by stating, "[y]ou never know when you're going to die"; "they could die at any moment"; "they never know when death may come"; and "they could die from being shot by a bullet while on the sidewalk"). Indeed, "[c]ontext is everything in threat jurisprudence," and the context here unequivocally demonstrates that Defendants threatened Plaintiff, its staff, and its patients. *Planned Parenthood of Columbia/Willamette*, 290 F.3d at 1071.

### C. Carafem is entitled to an injunction under the FACE Act.

The FACE Act provides a civil right of action to "a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services." 18 U.S.C. § 248(c)(1)(A); *see also id.*, § 248(e)(5) (defining "reproductive health services" as "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.")

---

[10] Notably, Operation Rescue National is the predecessor organization to OSA. Compl. ¶ 7; https://en.wikipedia.org/wiki/Operation_Save_America, last accessed August 9, 2022.

13

Carafem indisputably meets this definition. Civil remedies available under the Act comprise any "appropriate relief including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses." *Id.* § 248(c)(1)(B).

The injunction carafem seeks is similar to, or even narrower than, injunctions courts have upheld in other FACE Act cases. Carafem is asking to enjoin Plaintiffs from engaging in conduct that violates the FACE Act; entering private property during and around the hours of operation; and making excessive noise such that it can be heard from inside the building and disrupt the provision of healthcare by carafem staff. These are reasonable limitations. Indeed, the Supreme Court upheld an injunction creating a thirty-six-foot buffer zone protecting clinic entrances and its parking lot and restraining protestors from "'singing, chanting, whistling, shouting, yelling, use of bullhorns, auto horns, sound amplification equipment or other sounds or images observable to or within earshot of the patients inside the [c]linic.'" *Madsen v. Women's Health Center*, 512 U.S. 753, 770, 772 (1994). The Court reasoned that noise control is particularly important as "a restful, uncluttered, relaxing, and helpful atmosphere" facilitates treatment and recovery. *Id*. "The First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests." *Id*. More recently, a federal district court in New York enjoined protestors from "yelling or shouting" on the street in front of the clinic where—as here—the yelling could be heard on the second floor of the clinic. *N.Y. ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 485 (S.D.N.Y. 2006). That court reasoned the injunction was necessary because "[t]he defendants' yelling is audible on the second floor of the Center, where patients are counseled. . . . Patients are distracted by the noise and are unable to focus on questions and instructions given to them." *Id*. at 468.

The same rationales that supported these injunctions under the FACE Act support the injunction sought by carafem, independently of the remaining preliminary injunction factors. This is especially true in light of the FACE Act itself, as a "statutory provision authorizing preliminary injunctive relief may be an adequate substitute for a finding of irreparable injury to the plaintiff." *U.S. v. Roach*, 947 F. Supp. 872, 877 (E.D. Pa. 1996) (citations omitted). Here, Defendants plainly violated the FACE Act on both July 26 and 28, 2022, and have indicated that they intend to "escalate" their harassment campaign against carafem and that they have additional "activities" planned. Thus, this Court should presume irreparable harm.

## II. Plaintiff's Staff and Patients Have Suffered and Will Suffer Irreparable Injury Absent Injunctive Relief.

Even in the absence of such a presumption, Defendants have clearly caused irreparable harm and have pledged to continue doing so. This past and future harm entitles carafem to a preliminary injunction to protect itself, its staff and its patients. An injury is irreparable "if it is not fully compensable by monetary damages." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th. Cir. 2007)). Patients have a right to seek and physically access reproductive health care. *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 372-373 (1997). When "women [are] denied access" to reproductive health services, they "cannot be compensated by money damages; injunctive relief alone can assure them the clinics' availability." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989).

Defendants repeatedly obstructed the entrance, common areas, and suite doorway of carafem, making it inaccessible to patients during the relevant time-period. Their threatening actions repeatedly caused carafem to initiate lock-down procedures for the safety of its staff and patients. This meant that patients, even inside the clinic, were facing delays in care and serious

fear for their physical safety. (Davidson Decl. ¶ 17–19; Wheeler Decl. ¶ 15–21; Doe Decl. ¶ 26-32.) During the obstruction and threatening actions of the Williams Defendants and Defendant Chavannes, a carafem patient was unable to enter the clinic suite. She reported to clinic staff that when Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes were in front of the clinic entrance, she had been hiding down the second-floor hallway, around a corner so as to remain unseen. (Wheeler Decl. ¶ 21.) Statements obtained from clinic patients and staff confirm their inability to access the facility, imminent fear of physical danger, intimidation, and experience of threats to their personal safety. (Davidson Decl. ¶ 20; Doe Decl. ¶¶ 4–11, 14–22.)

Moreover, absent injunctive relief, carafem staff and patients will continue to experience threats and intimidation. OSA has indicated it and its members' intention to continue to harass carafem until and after Tennessee's trigger law goes into effect on August 25, 2022. (Davidson Suppl. Decl. ¶ 7.) Historical data provides every reason to believe that Defendants will continue to violate the FACE Act even as carafem changes its policies and practices to comply with the law because these same protestors have targeted, blockaded, and intimidated other healthcare providers who no longer perform abortion services. (Grant Decl. ¶ 10.) Without an injunction, carafem staff perform their jobs—and live their lives—in fear of the Defendants. (Doe Decl. ¶¶ 25–32)

### III. The Balance of Harms and Public Interest Strongly Favor Injunctive Relief.

Public interest concerns weigh overwhelmingly in favor of the preliminary injunction. Defendants have made clear that their goal is to thwart the provision of abortion services and all reproductive care at carafem. At present, abortion remains legal in Tennessee, albeit with severe restrictions. *See Memphis Ctr. for Reprod. Health v. Slatery*, 2022 WL 2570275, at *1 (6th Cir. June 28, 2022) (vacating preliminary injunction and permitting Tennessee's ban on abortions after six weeks of pregnancy to go into effect). Despite those restrictions, carafem has committed itself

to ensuring that its patients have access to the abortion care they desire, within the confines of the law. And after Tennessee's trigger law goes into effect, carafem will continue to serve patients seeking reproductive care in the form of birth control and testing for sexually-transmitted infections. (Grant Decl. ¶ 7-9.) Defendants' conduct and subsequent statements make clear that they intend to deprive carafem's patients of their ability to make legally-protected personal health decisions of incalculable importance, whether that is abortion care or the decision to take contraceptives to prevent pregnancy. "The public interest in preserving the status quo and in ensuring access to [reproductive] health care services while this case proceeds is strong." *Planned Parenthood Sw. Ohio Region v. Hodges*, 138 F. Supp. 3d 948, 961 (S.D. Ohio 2015).

As set out above, carafem faces the imminent threat of Defendants' continued harassment, which dramatically interferes with the ability of carafem's staff to provide reproductive health services and with the ability of carafem's patients to receive it, thereby working irreparable injury. In contrast, injunctive relief would impose no harm whatsoever on Defendants. There is simply no argument that Defendants will be harmed if the Court enjoins them from violating federal law. Defendants will be free to exercise their First Amendment rights and to communicate their anti-abortion message—they simply will not be able forcibly deprive others of the ability to access medical care at carafem while doing so. For the same reasons, the requested injunction imposes no harm on any third parties.

### IV. Plaintiff Should Not be Required to Post a Bond

"[T]he rule in [the Sixth] circuit has long been that the district court possesses discretion over whether to require the posting of security" when issuing a preliminary injunction. *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing cases and affirming the district court's waiver of a bond); *see also Jeffreys v. My Friend's Place, Inc.*, 719 F. Supp. 639, 649

(M.D. Tenn. 1989) (issuing preliminary injunction without requiring the posting of security). Exercise of that discretion is particularly appropriate when, as here, issues of public concern or important federal rights are involved. *See Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.2d 780, 782 (10th Cir. 1964). Defendants will not incur significant financial costs if the preliminary injunction is granted. Chief Judge Crenshaw, in granting the TRO in this case, made the finding that no security is required under Fed. R. Civ. P. 65(b). (Dkt. 9 at ¶ 11.) Plaintiff similarly should be excused from posting bond for the preliminary injunction. *See* Fed. R. Civ. P. 65(c).

## CONCLUSION

For the reasons set forth above, this Court should grant carafem's request for a preliminary injunction and enjoin Defendants and others acting in concert with them from using physical obstruction or intimidation to intentionally interfere with any person, or attempt to intentionally interfere with any person, because the person was or will be obtaining or providing reproductive health services at carafem. Specifically, the Court should enjoin Defendants and others acting in concert with them from further violating the FACE Act, from entering the building in which carafem is located or its parking lot, and from yelling, using amplification devices, or otherwise intentionally making noise that can be heard from within the carafem building.

Date: August 9, 2022

Respectfully submitted,
*/s/ Sarah B. Miller*
Sarah B. Miller
Angela L. Bergman
Allison Wiseman Acker
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
(615) 742-6293 (facsimile)
smiller@bassberry.com
abergman@bassberry.com
allison.acker@bassberry.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing will be served this 9th day of August, 2022 via Federal Express, on the defendants identified below:

*Via Federal Express*
Aaron J. Hurley
2526 5th St.
Santa Monica, CA 90405

*Via Federal Express*
Frank "Bo" Linam
195 Spring Creek Lane
Lebanon, TN 37090

*Via Federal Express*
Brent Buckley
516 S. Main St.
Topeka, IN 46571

*Via Federal Express*
Jason Storms
955 County Road C
Grafton, WI 53024

*Via Federal Express*
Chester "Chet" Gallagher
1145 Holloway Road
Lebanon, TN 37090

*Via Federal Express*
Matthew Brock
14 Anderson St.
Inman, SC 29349

*Via Federal Express*
Coleman Boyd
1635 North Davis Road
Bolton, MS 39041

*Via Federal Express*
Operation Save America National, Inc.
c/o Frank Campana, Registered Agent
847 Remsen Ave NW
Palm Bay, FL 32907

*Via Federal Express*
Edmee Chavannes
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via Federal Express*
Rickey Nelson Williams, Jr.
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via Federal Express*
Bevelyn Z. Williams
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

                                            */s/ Sarah B. Miller*