UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---

**FEMHEALTH USA, INC., d/b/a CARAFEM,**

         Plaintiff,

v.

**RICKEY NELSON WILLIAMS, JR.;
BEVELYN Z. WILLIAMS; EDMEE
CHAVANNES; OPERATION SAVE AMERICA;
JASON STORMS; CHESTER GALLAGHER;
MATTHEW BROCK; COLEMAN BOYD;
FRANK "BO" LINAM; BRENT BUCKLEY;** and
**AJ HURLEY,**

         Defendants.

CAUSE NO. 3:22-cv-00565
JUDGE CAMPBELL

---

## OSA DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PETITION TO DISMISS PLAINTIFF'S COMPLAINT

    Defendants Operation Save America, Jason Storms, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, and Brent Buckley ("OSA Defendants" or "these Defendants"), by and through counsel, submit this memorandum of law in support of their petition to dismiss pursuant to Tenn. Code Ann. § 20-17-104.

### FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff, an abortion clinic offering "reproductive health services," initiated this action on July 29, 2022, as Operation Save America was nearing completion of its Foundations of Freedom national event. In its original Complaint, Plaintiff asserted a single cause of action for violation of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 by physically obstructing the entrance to the building housing the clinic. Plaintiff complained that on July 26, 2022, these Defendants gathered outside its Mt. Juliet clinic "on the streets and sidewalks," that they "held

signs depicting graphic images and used megaphones." Complaint, ¶ 17 (ECF 1). Plaintiff further complained that "a group of approximately seven men" approached the front entrance of the building. *Id.* at § 18. A video of the incident reveals that these Defendants wanted only to ascertain whether Plaintiff was performing abortions in violation of the Tennessee trigger law, and if so, whether the police intended to enforce the law. *See* https://www.facebook.com/100005473300370/posts/pfbid02fM3xiPXH7Z7JWkr6hJB2scv3rXYPqA2EwrJaF2Uf6R5f1Cnf16R82fRFhFKWjzxal/?d=n) (these Defendants' Exhibit G at preliminary injunction hearing). At no time did these Defendants physically obstruct any patient or other individual entering or exiting the building. *Id.* In fact, these Defendants *assisted* in *removing* those who were obstructing the entrance. *Id.*

Plaintiff further complained that these Defendants intended to return each day for the remainder of the week. Compl., ¶ 24. Plaintiff then complained that these Defendants did indeed return to the public ways on July 27 and July 28, where they once again exercised their free speech and freedom of assembly. *Id.* at ¶¶ 27, 29.

On August 19, 2022, Plaintiff filed an Amended Complaint. ECF 38. This time, Plaintiff asserted six causes of action: violation of FACE; trespass to land (as against the OSA Defendants); trespass to land (as against the At The Well Defendants); assault (as against the At The Well Defendants); nuisance (as against the OSA Defendants); and nuisance (as against the At The Well Defendants). In addition to the complaints about these Defendants' exercising their freedom of speech, freedom of association, and right to petition as alleged in the original complaint, in the Amended Complaint Plaintiff also complained that on July 28 these Defendants and their supporters "lined the sidewalks and played a crying baby over large speakers," which "visibly upset" certain patients. Amended Complaint, ECF 38, at ¶ 32; *see also id.* at ¶ 40. Indeed, the

playing of the crying baby forms the centerpiece of Plaintiff's Count V, the nuisance claim against these Defendants. Plaintiff alleges that the "amplification of crying babies at a volume that could be heard within carafem's patient treatment rooms disturbed" the patients and staff. *Id.* at ¶ 63.

## ARGUMENT

I. **THE TENNESSEE PUBLIC PARTICIPATION ACT.**

The activities of these Defendants were constitutionally protected speech, expressive conduct, and protected petitioning the government for a redress of grievances in a traditional public forum. Plaintiff's claims of physical obstruction and nuisance are merely pretexts for censoring and suppressing these Defendants' message, in violation of the Tennessee Public Participation Act (TPPA), Tenn. Code Ann. §§ 20-17-101, et seq. The purpose of the TPPA is "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. Plaintiff's lawsuit is targeted directly at the constitutional rights of these Defendants to petition, to speak freely, to associate freely, and to participate in government freely. Accordingly, this motion should be granted.

The terms employed in the TPPA are clearly defined, and squarely encompass the activities of these Defendants. For example, "Exercise of the right of association" is defined to mean "exercise of the constitutional right to join together to take collective action on a matter of public concern that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(2). Similarly, the Act defines "Exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern or religious expression that falls within the protection of the United States Constitution or the

Tennessee Constitution." *Id.* at -103(3). These Defendants joined together in Mt. Juliet (and elsewhere in middle Tennessee) to take collective action on a matter of public concern, namely abortion, which these Defendants (and the Tennessee legislature) believe constitutes the intentional taking of an innocent child's life. *See, e.g.*, *Goza v. Memphis Light, Gas & Water Div.*, 398 F. Supp. 3d 303, 318 (W.D. Tenn. 2019) (employee's statements on Facebook concerning race, abortion, federal policy, etc. were on matters of public concern); *Nicdao v. Two Rivers Pub. Charter Sch., Inc.*, 275 A.3d 1287, 1291 (D.C. 2022) (reversing trial court's denial of anti-SLAPP motion brought by pro-life advocates; noting that trial court found that "appellants made a prima facie showing that Two Rivers' claims stemmed from their protests on an issue of public interest, abortion").

Tenn. Code Ann. § 20-17-104(a) provides: "If a legal action is filed in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may petition the court to dismiss the legal action." *Id.* The petition must be filed "within sixty (60) calendar days from the date of service of the legal action." *Id.* at -104(b). This petition is being filed within sixty (60) days of the filing of the original complaint, so it is assuredly timely, even though the Amended Complaint was not filed until August 19, only slightly more than a month ago. Once a petition is filed under the TPPA, "[a]ll discovery in the legal action is stayed." *Id.* at -1-4(d).

Although the petitioning party bears the initial burden of making a prima facie showing that the lawsuit "is based on, relates to, or is in response to" petitioners' right to free speech, right to petition, or right of association, once that prima facie showing is met – as it is here – the burden shifts to the Plaintiff and "the court **shall** dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105 (emphasis added). As shown above, this lawsuit is plainly "based on,

4

relates to, or is in response to" these Defendants' exercise of their rights to free speech, freedom of association, and right to petition. As such, these Defendants have met their initial burden and made a prima facie showing, and the burden of proof is thus on Plaintiff to establish a prima facie case for each essential element of each of it's claims.

Quite apart from the purpose of the Tennessee Public Participation Act, the Supreme Court of the United States has repeatedly emphasized the importance of protecting speech on matters of public concern:

> "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-759, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985) (opinion of Powell, J.) (quoting *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 776, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978)). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (internal quotation marks omitted).

*Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011). There can be little doubt that the activities of these Defendants were on a matter of public concern.

*Snyder* teaches that speech "at a public place on a matter of public concern" is entitled to "special protection under the First Amendment" and "cannot be restricted simply because it is upsetting or arouses contempt." *Id.* at 458 (internal quotation marks and citation omitted). Similarly, the TPPA protects advocacy and expressive conduct on matters of public interest. Because these Defendants' speech and expressive conduct was in furtherance of the right of advocacy on a matter of public interest and occurred on the public ways, Plaintiff cannot must now meet its burden on each essential element of each cause of action.

5

## II. THE TPPA SHOULD APPLY HERE.

The Sixth Circuit has to date not ruled on the question whether state anti-SLAPP statutes are applicable in federal court, and there is a split in the other circuits on that question. *See Lampo Grp., LLC v. Paffrath*, No. 3:18-CV-01402, 2019 WL 3305143, at *2 (M.D. Tenn. July 23, 2019) (Richardson, J.) (collecting cases and ruling that California anti-SLAPP statute was not applicable in federal court sitting in diversity jurisdiction). Judge Richardson reiterated his position on the matter in a later case as well, *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022), in which he again observed that the motion to strike procedural rules in the TPPA and anti-SLAPP statutes appear inconsistent with Federal Rules of Civil Procedure 8, 12, and 56. *Id.*

These Defendants respectfully suggest that under the circumstances of this case, where the Plaintiff has already made numerous submissions of evidentiary materials and the Court has heard Plaintiff's preliminary injunction motion, any inconsistency in the TPPA procedures is greatly lessened and arguably non-existent. Plaintiff cannot be heard to complain that it would be prejudiced by being required to adduce evidence sufficient to make a prima facie case for each essential element of its claims. It has had ample opportunity to marshall its evidence and meet its burden.

In addition, even if the Court find the TPPA inapplicable to Plaintiff's federal claim (under FACE), it should nevertheless apply TPPA fully to Plaintiff's state law claims, which after all are on the same footing as the TPPA, arising out of state law and state statutes and local ordinances.

## III. PLAINTIFF IS UNABLE TO MAKE A PRIMA FACIE CASE FOR EACH ESSENTIAL ELEMENT OF ITS CLAIMS, AND HAS LIKEWISE FAILED TO STATE A CLAIM.

The standard governing a motion under Fed. R. Civ. P. 12(b)(6) is well settled:

6

> Under Rule 12(b)(6), a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir.1975). The complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). However, we need not accept as true legal conclusions or unwarranted factual inferences. *See Westlake*, 537 F.2d at 858; *Davis H. Elliot*, 513 F.2d at 1182; *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir.1971).

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Under the TPPA, Plaintiff must bring forth admissible evidence in support of each element of its legal claims. Tenn. Code Ann. § 20-17-105(d) ("The court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties."). It may not rely upon hearsay, innuendo, and speculation, as it did in its motion for preliminary injunction.

Plaintiff cannot meet its burden. On its FACE claim, it is unable to show a single individual who was physically obstructed by any of these Defendants, nor can it show any act of interference or intimidation by physical obstruction. On its trespass to land claim, Plaintiff cannot show that it has standing to sue, because it is but one of many tenants in common and not all have joined the lawsuit. Additionally, these Defendants were acting under a good faith belief that their conduct was immediately necessary to avoid imminent harm to others, and are therefore entitled to a defense of necessity. On its nuisance claim, Plaintiff cannot show that the amplified speech of these Defendants was unreasonable under the circumstances, given the time of day, the volume of the sound, the ambient noise, and the locality. Moreover, Plaintiff's claim, motivated by a desire to suppress these Defendants' speech, amounts to a prior restraint on speech that is presumptively

7

unconstitutional under long standing Supreme Court precedent. For all of these reasons, and as discussed more fully below, Plaintiff's case against these Defendants should be dismissed.

Similarly, Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6).

### A. Plaintiff's FACE Claim Should be Dismissed.

The only actions by these Defendants that could conceivably be construed as violative of FACE were those occurring on the morning of July 26, 2022. But none of these Defendants engaged in physical obstruction to intentionally injure, intimidate, or interfere with a single individual because that individual was seeking to obtain or provide "reproductive health services." Rather, these Defendants conscientiously avoided obstructing anyone, and in fact even took affirmative action to ask building security to stand aside in order not to obstruct the entrance. Plaintiff's hearsay evidence, inference, and innuendo is inadmissible, and what admissible evidence it is able to muster fails as a matter of law to establish a prima facie case on each element of the claim. The speculative musings of some Defendants concerning hypothetical circumstances have no bearing on the question whether their conduct on July 26, 2022 constituted intentional interference with patients of the Plaintiff by means of physical obstruction. The Declarations of these Defendants alone defeats any claim of intent. *See* Declaration of Jason Storms (ECF 42-1); Decl. Bo Linam (ECF 42-3); Decl. Coleman Boyd (ECF 42-10).

In addition, as set forth in these Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, incorporated herein by reference, the At The Well Defendants were not affiliated with these Defendants, and their actions cannot as a matter of law be attributed to these Defendants. Furthermore, the FACE Act is likely unconstitutional. While Plaintiff relies on pre-*Dobbs* case law upholding its constitutionality under different factual and legal circumstances, **no case** has carefully analyzed and upheld its constitutionality under *McCullen v.* Coakley, 573 U.S.

464 (2014) and *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). The Court in *McCullen* stated unequivocally that "[t]he [Massachusetts] Act would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." Id. at 479 (quoting *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 383 (1984)). And if "speech outside . . . abortion clinics caused offense or made listeners uncomfortable, such offense or discomfort would not give . . . a content-neutral justification to restrict the speech." *Id.* at 481. That is precisely what FACE does: it does not prohibit *all* uses of force, threat of force, or physical obstruction, but only such actions undertaken "**because that person is** . . ., obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1) (emphasis added). The identical actions undertaken by another actor, for example, one who opposes the pro-life advocate, **are not prohibited by FACE**. Thus, in order to apply FACE, enforcement authorities must undertake precisely what *McCullen* forbids, namely, to examine the content of the message conveyed. Under *McCullen* and *Town of Gilbert* and their progeny, FACE is unconstitutional because it discriminates on the basis of viewpoint and cannot survive strict scrutiny. *See* Resp. Opp. Mot. for Prelim. Injunc. (ECF 42) at 23-24.

Plaintiff cannot meet its burden under the TPPA, and it has failed to state a claim; its FACE claim should therefore be dismissed.

### B.   Plaintiff's Trespass Claim Should be Dismissed.

It has long been held in Tennessee that "one tenant in common could not sue alone for trespass to land." *See*, *e.g.*, *Mayfield v. Stephenson*, 65 Tenn. 397, 401–02 (1873). Plaintiff does not own the building, which is generally open to the public. Plaintiff is but one tenant in the medical building in which it offices. No other tenant has joined in its lawsuit; nor has the building owner or manager. As such, Plaintiff is unable to make a prima facie case for trespass to land. Similarly,

a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "[A] mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved [for standing purposes]." *Sierra Club v. Morton,* 405 U.S. 727, 739 (1972) (internal quotation marks omitted); *see also Smith v. Jefferson Co. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011) (en banc) (teachers had no standing to sue on behalf of students, despite common interests).

Further, even if it could establish standing and the essential elements to trespass, its claim would not lie against these Defendants because they are entitled to the defense of necessity. "Necessity is a defense wherein conduct, otherwise unlawful, is justified if: '(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.'" *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (quoting Tenn.Code Ann. § 39–11–609). Here, these Defendants reasonably believed that Plaintiff was performing abortions in violation of the Tennessee trigger law, which they believed had already gone into effect. In fact, the police shared that belief. *See*, *e.g.*, Decl. Jason Storms, ¶¶ 7, 8. These Defendants therefore believed that innocent children faced imminent death at the hands of Plaintiff unless they acted promptly to intervene with the police and initiate immediate action to prevent Plaintiff from violating the law. Any slight harm accruing from these Defendants' approaching the entrance of a building open to the public to merely inquire whether Plaintiff was in fact performing abortions and whether the police would act to enforce the trigger law was far outweighed by the harm the

10

innocent children in the womb were facing at the hands of Plaintiff. Accordingly, Plaintiff cannot make a prima facie case of trespass to land, and the claim should be dismissed.

    **C.    Plaintiff's Nuisance Claim Should be Dismissed.**

        **1.    Plaintiff cannot make a prima facie case on each element of its claim.**

Plaintiff does not specify whether it claims a public nuisance or a private nuisance, but these Defendants will assume, based on the allegations in the Amended Complaint, that Plaintiff intended to plead a private nuisance.[1] A nuisance claim "must necessarily depend upon the circumstances of each case, such as locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like." *Caldwell v. Knox Concrete Prod., Inc.*, 54 Tenn. App. 393, 402, 391 S.W.2d 5, 9–10 (1964) (citing *Clinic & Hospital v. McConnell*, 241 Mo.App. 223, 236 S.W.2d 384, 23 A.L.R.2d 1278, and Restatement, Torts, Secs. 822, 831, pp. 214, 265). "Generally, noise is not a nuisance per se for it is recognized that no one is entitled to absolute quiet in the enjoyment of his property, but may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells or has his business." *Id.* (citations omitted). "Whether a particular activity or use of property is a nuisance is measured by its effect on a 'normal person,' not by its effect on the 'hypersensitive.'" *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013) (citing *Jenkins v. CSX Transp., Inc.*, 906 S.W.2d 460, 462 (Tenn.Ct.App.1995)).

---

[1] To the extent Plaintiff intended to plead a public nuisance, the OSA Defendants would suggest that it lacks standing. *See*, *e.g.*, *Adams v. Adient US LLC*, No. 120CV01197JTFJAY, 2022 WL 4131768, at *8 (W.D. Tenn. Sept. 12, 2022) ("[n]o private citizen can bring a bill to restrain a public nuisance, unless the complainant can show some injury of a serious nature to himself, different and apart from the general injury to the public.") (quoting *Weakley v. Page*, 102 Tenn. 178, 53 S.W. 551, 554 (1899) and citing *Wayne Cnty v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W. 2d 274, 283 (Tenn. Ct. App. 1988)).

In addition, a nuisance must be substantial as well as objectively unreasonable: "[s]o 'long as the interference is substantial and unreasonable, such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance.'" *Adams v. Adient US LLC*, No. 120CV01197JTFJAY, 2022 WL 4131768, at *9 (W.D. Tenn. Sept. 12, 2022) (quoting *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 365 (Tenn. 2002) (quoting W. Page Keeton, Prosser and Keeton on the Law of Torts 619–20 (5th ed.1984)). One element that makes an alleged nuisance substantial is its continuity. *E.g.*, *Hattner v. United States*, 293 F. 381, 382 (6th Cir. 1923) ("Maintaining a nuisance, . . . 'implies a continuity of action for a substantial period.'") (quoting *Reynolds v. United States* 282 Fed. 258 6th Cir. 1922); *Ryan v. Soucie*, No. E201801121COAR3CV, 2019 WL 3238642, at *5 (Tenn. Ct. App. 2019) (quoting with approval comment to Restatement (Second) of Torts § 821D, which stated: " [T]he flooding of the plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration . . .").

Here, Plaintiff improperly seeks to measure its claimed nuisance, which occurred on a single occasion on July 28, 2022, by its effect on the hypersensitive, proffering inadmissible hearsay testimony of certain alleged unknown patients and hysterical staff members whose delicate emotions were stressed before these Defendants ever did a thing because Plaintiff's security director and the National Abortion Federation security director had grossly exaggerated the effect of these Defendants' peaceful expressive activities. In addition, Plaintiff seeks to ignore the circumstances under which the amplified sound was produced: on a public sidewalk, during normal business hours, in accordance with local sound ordinances governing volume, and in the context of a public expression on a matter of great public concern. Under such circumstances, Plaintiff cannot establish a prima facie case on each element of its claim, its Amended Complaint

fails to state a claim upon which relief can be granted, and the claim should be dismissed.

### 2. An injunction against these Defendants' amplified speech would amount to an unconstitutional prior restraint on speech.

Plaintiff indisputably seeks to enjoin these Defendants' speech and expressive conduct. *See*, *e.g.*, Am. Compl., ¶ 63 (alleging that the "amplification of crying babies . . . disturbed the reasonable and comfortable use of the facility . . . and interfered with carafem's ability to provide medical care to patients"). The Supreme Court has emphasized that "court orders that actually forbid speech activities — are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). Furthermore, prior restraints on speech and publication are "the 'most serious and the least tolerable infringement on First Amendment rights.'" *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Consequently, "those seeking to justify a prior restraint must satisfy a heavy burden." *Hunt*, 872 F.2d at 293 (citing *Neb. Press*, 427 U.S. at 558, 559).

As the Supreme Court has explained, the reason for this high burden is that unfettered censorship poses serious and unacceptable risks to a free society:

> The presumption against prior restraint is heavier – and the degree of protection broader – than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: *a free society prefers to punish the few who abuse rights of speech* after *they break the law than to throttle them and all others beforehand*. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975) (emphasis added).

Of equal concern when considering a request to enjoin First Amendment activity is the lack of narrow limits on such restraints. For example, the Third Circuit refused to enter an injunction against plainly obscene films under a nuisance theory because the standards defining the offensive conduct were not "sufficiently narrow or precise to pass constitutional muster." *Grove Press Inc. v. City of Phila.*, 418 F.2d 82, 88 (3d Cir. 1969). An injunction entered on the slender reed of a

13

private nuisance theory presents a serious risk of overbreadth and constitutional invalidity. *See, e.g.*, *Gen. Corp. v. State*, 294 Ala. 657, 665-68 (Ala. 1975) (holding unconstitutional as prior restraint an injunction against showing obscene movies; "[e]vidence of obscene conduct in the past does not justify enjoining future conduct which is protected by the First Amendment"); *Black Rock City LLC v. Pershing Cnty. Bd. of Comm'rs*, 2013 U.S. Dist. LEXIS 60072, 3:12-cv-00435-RCJ-VPC, *22-25, 2013 WL 1795760 (D. Nev. 2013) (expressing concern that a "significant amount of protected speech may be prohibited . . . in relation to unprotected speech").

This logic applies with equal if not greater force here. Plaintiff has identified a particular message – the playing of a baby crying – to which it objects. The specificity of its complaint exposes Plaintiff's true concern to be not the volume of the sound, but the viewpoint of the message. This is censorship, pure and simple.

Additionally, even if Plaintiff could make out a prima facie showing on each of the elements, which it cannot, the more prudent course would be to punish discrete illegal acts after the fact rather than to enter a broad injunction before the fact, especially when Plaintiff has failed to show that any improper acts that may be enjoined are likely to recur. After all, "[b]road prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP v. Button*, 371 U.S. 415, 438 (1963) (internal citations omitted).

Finally, it must be noted that Plaintiff did complain to the police – once – about the crying baby message, but significantly, the police informed Plaintiff that the volume was within permissible levels and was in full compliance with applicable laws and ordinances. Indeed, the volume on that day, July 28, was the same as the amplification employed on previous days; there was no change in either the equipment or the volume. The difference was only in the message.

14

Accordingly, Plaintiff is impermissibly seeking to suppress these Defendants' message, in violation of the First Amendment.

Plaintiff's nuisance claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the petition to dismiss should be granted. Plaintiff's lawsuit is an unwarranted and meritless attempt to censor and silence these Defendants' expressive activities on a matter of public concern. Alternatively, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Because the activities of the OSA Defendants are constitutionally protected and Plaintiff's claims are without merit, the case should be dismissed.

Dated: September 22, 2022

Respectfully submitted,

/s/Stephen M. Crampton
Stephen M. Crampton
Senior Counsel
Thomas More Society
P.O. Box 4506
Tupelo, MS  38803
scrampton@thomasmoresociety.org
662-255-9439


Larry L. Crain, Esq.
5214 Maryland Way
Suite 402
Brentwood, TN  37027
Voice: (615) 376-2600
Fax: (615) 376-2626
Mobile: (615) 300-3767
larry@crainlaw.legal
www.crainlaw.legal

*Counsel for Defendants Operation Save America, Jason Storms, Matthew Brock, Coleman Boyd, Frank*

*"Bo" Linam, and Brent Buckely*

# CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, and that a copy of the foregoing will be sent electronically to all counsel of record by operation of the Court's CM/ECF system.

In addition, a true and correct copy of the foregoing will be served as follows:

**Via U.S. Mail**
Aaron J. Hurley
11401 Washington Pl Apt J
Los Angeles, CA 90066-5051

**Via U.S. Mail**
Edmee Chavannes
9122 Integra Preserve Ct., #318
College Dale, TN 37363-4407

**Via U.S. Mail**
Chester "Chet" Gallagher
1145 Holloway Road
Lebanon, TN 37090

**Via U.S. Mail**
Bevelyn Z. Williams
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

**Via U.S. Mail**
Rickey Nelson Williams, Jr.
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

**Via U.S. Mail**
At The Well Ministries, Inc.
c/o Bevelyn Williams, Registered Agent
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

s/Stephen M. Crampton
Stephen M. Crampton