UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| FEMHEALTH USA, INC., d/b/a CARAFEM, <br><br> Plaintiff, <br><br> v. <br><br> RICKEY NELSON WILLIAMS, JR.; BEVELYN Z. WILLIAMS; EDMEE CHAVANNES; AT THE WELL MINISTRIES; OPERATION SAVE AMERICA; JASON STORMS; CHESTER GALLAGHER; MATTHEW BROCK; COLEMAN BOYD; FRANK LINAM; BRENT BUCKLEY; and AJ HURLEY, <br><br> Defendants. | Civil Action No. 3:22-cv-00565 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Jeffery S. Frensley |

## CARAFEM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The motion to dismiss and memorandum in support thereof (Dkt. 74, 75) filed by Defendants Operation Save America ("OSA"), Jason Storms, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, and Brent Buckley (referred to herein as "Defendants") provides no legal basis to dismiss any portion of carafem's Amended Complaint (Dkt. 38). Instead, Defendants cite inapposite and outdated case law, ignore the relevant legal standards, and inappropriately rely upon facts outside the Amended Complaint. Their motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff operates a health center in Mt. Juliet, Tennessee, that provides a variety of reproductive healthcare services including various methods of birth control, pregnancy testing and ultrasounds, and testing for sexually-transmitted infections. (Dkt. 38, Am. Compl. ¶ 1.) On July

26, 2022, Defendants and others gathered outside the Providence Pavilion medical building ("the medical building") in which carafem's Mt. Juliet clinic is located. (*Id.* ¶ 20.) A group of men including Defendants crossed the medical building's parking lot and approached the front entrance of the building where they were stopped by medical building security. (*Id.* ¶ 21.) Defendants and others surrounded the security personnel and refused to leave, despite being instructed by security personnel to get off the property. (*Id.* ¶¶ 22, 25.) Defendants' obstruction of the medical building entrance and refusal to leave required carafem to initiate lockdown procedures to ensure the safety of patients and staff. (*Id.* ¶ 23.) Carafem security called the Mt. Juliet Police, who prevailed upon Defendants to exit the medical building property after several minutes of repeated instruction to do so. (*Id.* ¶¶ 24–26.)

Following this encounter, the Mt. Juliet Deputy Police Chief reported to carafem staff that Defendants intended to return to the medical building each day for the remainder of the week. Defendants had also explained that they planned to "escalate" activities on Friday, July 29, 2022, planned to "fill the hallways" of the clinic "sometime soon," and had threatened that they "have men out here who are willing to do what needs to be done." (*Id.* ¶ 27.) Indeed, the following day, July 27, 2022, members of OSA protested outside the medical building using amplification so loud that the protestors' broadcast intruded into patient rooms, where carafem staff were forced to yell over the threats and intimidation to complete patient care visits. (*Id.* ¶ 30.)

Again on July 28, 2022, Defendants protested outside the medical building property and amplified recordings and their own shouts at such a high volume that patients had trouble hearing and understanding carafem staff during their medical appointments and were upset by the noise. (*Id*. ¶ 32.) Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes entered into the medical building and attempted to enter carafem's clinic by ringing the front desk via an

intercom system, pretending to seek services from the clinic. (*Id.* ¶¶ 33–34.) When denied entrance, Defendant Bevelyn Williams threatened on video, "Now either they [are] gonna let us in or we take this whole building down. It's up to them." She then got even more specific with her threats, stating, "We are trying to see if they let us into the office, into carafem. But if not, we are just going to terrorize this whole building." (*Id.* ¶ 35.) Once again, carafem was forced to go into lockdown, and once again, police were required to remove Defendants Williams, Williams, and Chavannes from the building. (*Id.* ¶¶ 36–37.)

On July 29, 2022, concerned about safety and cognizant of Defendants' threats of further escalation, carafem filed a complaint alleging violation of the Freedom of Access to Clinics Entrances Act ("FACE Act"), 18 U.S.C. § 248, (Dkt. 1), and sought an emergency temporary restraining order to prohibit Defendants from physically obstructing, intimidating, injuring or interfering with any person who obtained or provided reproductive health services and from entering the medical building property, (Dkt. 2). The Court granted the temporary restraining order. (Dkt. 9.) On August 9, 2022, carafem moved for a preliminary injunction, (Dkt. 13), which this Court granted after a hearing, (Dkt. 66). On August 19, 2022, carafem filed an Amended Complaint (Dkt. 38), and Defendants moved to dismiss carafem's Amended Complaint on September 22, 2022, (Dkt. 74).

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the Court must

construe the complaint in the light most favorable to the plaintiff, accept the allegations within the complaint as true, and draw all reasonable inferences in favor of the plaintiff, *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018), but should not consider "facts outside the complaint's pleadings*,*" *Loc. 18 Int'l Union of Operating Eng'rs v. Ohio Contractors Ass'n*, 644 F. App'x 388, 392–93 (6th Cir. 2016). Dismissal is appropriate "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

### I. The TPPA is inapplicable to this action and Defendants' unlawful conduct.

Defendants' primary argument is that carafem's claims should be dismissed pursuant to the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101, *et seq*. "The statute is, at least generally speaking, designed to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Mucerino v. Martin*, 2021 WL 5585637, at *5-6 (M.D. Tenn. Nov. 30, 2021) (Trauger, J.) (internal quotations omitted) (refusing to apply TPPA due to TPPA's procedural conflict with federal law). Defendants' attempt to avail themselves of the TPPA is not supported in fact or in law.

As an initial matter, courts in this district have repeatedly refused to apply the TPPA in federal actions because the TPPA, like other anti-SLAPP[1] statutes, is a procedural mechanism that directly conflicts with established federal rules governing pleading and dismissal. Even if the TPPA did apply in federal court—which it does not—carafem has already established a *prima facie* case on each of its claims, and, indeed this Court has already ruled that carafem has

---

[1] "SLAPP" stands for "strategic lawsuit against public participation," and, critically, anti-SLAPP laws have a stated purpose to target lawsuits attempting to limit speech protected by law.

established a *prima facie* case that Defendants violated the FACE Act, effectively mooting Defendants' arguments that the TPPA entitles them dismissal. (*See* Dkt. 65 at 6-7 (holding "Plaintiff is likely to succeed on their claim that Defendants violated the FACE Act").) Finally, federal courts have repeatedly held that the FACE Act is a content-neutral statute, meaning the TPPA does not provide a basis for dismissal here. *See, e.g.*, *Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002) ("To the extent the [FACE] Act implicates protected expression, we find that it does so in a content-neutral manner. . . . Moreover, the Act applies to anyone who violates its terms, regardless of ideology or message.").

### A. The TPPA is inapplicable to federal actions.

The TPPA does not apply to federal actions because the provisions for early dismissal of litigation under the TPPA directly conflict with established Federal Rules of Civil Procedure. Contrary to Defendants' argument that the Court should apply state procedural law here, federal courts apply federal procedure, irrespective of alleged prejudice. "Federal law is abundantly clear with regard to what must happen when a duly adopted Federal Rule of Civil Procedure collides with a state procedural edict in a federal court: the state requirement yields, and the Federal Rule prevails." *Mucerino*, 2021 WL 5585637, at *6.

Courts in this district have unequivocally held the TPPA's "self-evidently procedural nature" conflicts with the Federal Rules of Civil Procedure. *Id*. Indeed, "[t]he **core feature of the TPPA is its creation of a unique procedural mechanism**, distinct from an ordinary motion to dismiss for failure to state a claim, through which a defendant may seek an expeditious dismissal of the suit filed against him based on his participation in public discourse." *Id.* at *5 (emphasis added). As set out in the statute, once a defendant petitions for dismissal pursuant to the TPPA and sets out a *prima facie* case that the action against it is based on that party's exercise of free speech, the burden shifts to the plaintiff to establish a *prima facie* case for each element of the

5

underlying claim, or else the claim is dismissed. *See* Tenn. Code Ann. § 20-17-105. This procedure—and the associated burden placed on plaintiffs at the outset of the litigation—stands in stark contrast to well-established plausibility pleading requirements and associated opportunities for dismissal in Federal Rules of Civil Procedure 8 and 12(b)(6).

As Judge Trauger reasoned in *Mucerino*, the clear procedural nature of the TPPA "poses an obstacle to simply importing the TPPA in its unvarnished entirety into a case filed in federal court." *Mucerino*, 2021 WL 5585637, at *6. "The Federal Rules of Civil Procedure already set forth specific procedures pursuant to which a district court shall consider whether to dismiss a plaintiff's claims," which "differ from the procedures set out in the TPPA," including, most notably, the difference in the burden on the plaintiff, but also in evidentiary considerations, like the fact that the TPPA allows parties to rely on affidavits. *Id.*[2] The result is "a direct collision between the Federal Rules and . . . state law, at least in terms of how the court should consider requests for dismissal filed immediately after the filing of a complaint." *Id.* (internal quotations and alternations omitted).

Finding that the defendant's TPPA petition "certainly seems, on its face, to be a means of circumventing the ordinary allocation of burdens imposed by Rule 12(b) and developed, in federal caselaw, over many years and countless incremental decisions," the Court in *Mucerino* granted a motion to strike the petition. *Id.*; *see also Santoni v. Mueller*, 2022 WL 97049, at *14 (M.D. Tenn.

---

[2] An additional procedural contradiction is that the TPPA requires a response to the petition, "including any opposing affidavits, may be served and filed by the opposing party no less than five (5) days before the hearing" unlike the federal rules, which provide fourteen days to respond to a motion. *See* Tenn. Code Ann. § 20-17-104(c). The Court has not yet had the opportunity to review and consider evidence regarding whether a *prima facie* case of trespass or nuisance can be made here, so, should the Court determine to consider analysis of the sufficiency of the claims under the TPPA in this matter, carafem would ask the Court the opportunity to submit evidence and for an evidentiary hearing.

6

Case 3:22-cv-00565   Document 77   Filed 10/06/22   Page 6 of 19 PageID #: 573

Jan. 10, 2022) (Richardson, J.) (declining to apply the TPPA in federal court because it directly conflicts with Rules 8, 12 and 56); *Lampo Grp., LLC v. Paffrath*, 2019 WL 3305143, at *4 (M.D. Tenn. July 23, 2019) (Richardson, J.) (holding California's anti-SLAPP statute was procedural in nature and directly conflicted with the Federal Rules of Civil Procedure). The same result is required here.[3]

In short, Defendants cannot use state procedural law to circumvent the clear, established requirements for pleading and dismissal of actions provided by the Federal Rules of Civil Procedure. *See, e.g., Santoni*, 2022 WL 97049, at *14; *Mucerino*, 2021 WL 5585637, at *6. The Court should deny Defendants' arguments that the case should be stayed and/or dismissed accordingly.

**B. The TPPA does not apply to Defendants' unlawful conduct.**

The TPPA applies to legal actions "filed in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Tenn. Code Ann. 20-17-104(a). In petitioning to dismiss claims under the TPPA, Defendants, as the petitioning parties, have the "burden of making a prima facie case that a legal action against [them] is based on, relates to, or is in response to [their] exercise of the right to free speech, right to petition, or right of association[.]" Tenn. Code Ann. § 20- 17-105(a). Critically, the statute defines such activities to require that they "fall[] within the protection of the United States Constitution or the Tennessee

---

[3] Defendants admit that courts in the Middle District of Tennessee have declined to apply the TPPA due to procedural inconsistencies between the TPPA and federal law but claim that, in the instant case, "any inconsistency in the TPPA procedures is greatly lessened" because Plaintiff "has already made numerous submissions of evidentiary materials and the Court has heard Plaintiff's preliminary injunction motion." (Dkt. 75 at 6.) This argument is not supported by law. "[T]he determinative issue here is not the degree of the conflict between state and federal law but the existence of that conflict in the first place. If the court were to resolve the plaintiffs' claims pursuant to the procedures set forth in the TPPA, it would be adjudicating those claims in a manner not contemplated or authorized by the Federal Rules." *Mucerino*, 2021 WL 5585637, at *6.

Constitution." Tenn. Code Ann. § 20-17-103(2)-(4). Defendants' conduct described in the Amended Complaint, in violation of the FACE Act and constituting trespass and private nuisance, is not constitutionally-protected.

Carafem brought this suit seeking protection from Defendants' conduct, including trespassing on private carafem property, not from any speech of Defendants. Defendants cannot credibly argue that they have a protected First Amendment right to this activity, and, indeed, Defendants cite no case law that holds that trespassing on private property is constitutionally-protected speech or association.[4] In fact, the Sixth Circuit has already ruled that the FACE Act's restrictions are content-neutral, and that it "applies to anyone who violates its terms, regardless of ideology or message," *see Norton*, 298 F.3d at 553, foreclosing Defendants' argument that the FACE Act is unconstitutional. Indeed, the FACE Act has itself been repeatedly upheld as a constitutional, *content-neutral* law across the country. *See, e.g.,*; *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) (FACE Act is within commerce power of Congress and not facially inconsistent with First Amendment); *Am. Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir. 1995) (FACE Act is permissible under commerce clause, is not unconstitutionally overbroad or vague, and does not violate the free speech or free exercise clause or Restoration of Religious Freedom Act ("RFRA")); *Cheffer v. Reno*, 55 F.3d 1517 (11th Cir. 1995) (FACE Act is within Congress' commerce clause power and does not violate the Tenth Amendment, freedom of expression or free exercise clause); *United States v. Weslin*, 964 F. Supp. 83 (W.D.N.Y. 1997), *aff'd*, 156 F.3d 292 (2d Cir. 1998) (FACE Act does not violate free speech or free exercise, is permissible under

---

[4] Indeed, Defendants argument that carafem's claims were made in response to Defendants' exercise of constitutionally-protected speech because Defendants' conduct "occurred on the public ways" (Dkt. 75 at 5) is both circular and demonstrably untrue from their own video evidence. (*See, e.g.*, Dkt. 65 at 3-4 and 6-7).

commerce clause); *Planned Parenthood Ass'n of Se. Penn., Inc. v. Walton*, 949 F. Supp. 290 (E.D. Pa. 1996) (FACE Act does not violate First or Eighth Amendment and is within Congress' authority under 14th Amendment and commerce clause); *Council for Life Coal. v. Reno*, 856 F. Supp. 1422 (S.D. Cal. 1994) (FACE Act does not violate freedom of expression, is not overly broad or unconstitutionally vague, does not violate right to freedom of association, free exercise clause, or establishment clause, and is proper under commerce clause).

Defendants claim the ruling in *McCullen v. Coakley*, 573 U.S. 464 (2014), somehow changes the analysis of whether Defendants' First Amendment rights are implicated by this case, but that case, which analyzes a Massachusetts law, states only that if examination of "the content of the message that is conveyed" was necessary to determine whether a person had violated that law, then the law would be content-based. *Id*. at 479. Defendants' conduct that resulted in this case – trespassing, physically blocking doorways, amplification of sound at a volume that disrupts care – is not dependent upon the content of any message of Defendants. And as for Defendants' oft-repeated hypothetical that "identical actions undertaken by another actor, for example, one who opposes the pro-life advocate" would not be subject to the FACE Act is both irrelevant and patently untrue. The Sixth Circuit has noted that the Act has been applied to at least one pro-choice protestor and, in any event, "[a] group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Norton*, 298 F.3d at 553 (quoting *United States v. Soderna*, 82 F.3d 1370, 1376 (7th Cir. 1996)).

Moreover, as a factual matter, the conduct in which Defendants engaged is not the type of conduct protected by the TPPA: constitutionally-protected speech utilized in order to, for example, call attention to an issue of public policy to effect legislative, administrative, or judicial change. *See* Tenn. Code Ann. § 20-17-103(4) (defining right to petition under the TPPA). Instead,

Defendants were plainly acting in order to intimidate and/or punish carafem based on Defendants' mistaken understanding of Tennessee's then-present abortion laws, and were planning to stop carafem's operation in order to, in their own words, "take the law into their own hands." (Dkt. 65 at 6-7.)

Because Defendants have failed to meet their burden to show that carafem's lawsuit was filed in response to Defendants' exercise of constitutionally-protected rights, their TPPA argument would fail even if brought in a proper venue.

### C. As this Court has already ruled, carafem has made a *prima facie* case for each element of its FACE Act claim.

Defendants are not entitled to relief under the TPPA on the additional, independent ground that, as this Court has already held, carafem has established a *prima facie* case for each element of its FACE Act claim.

Even if the TPPA applied here **and** Defendants were able to make an initial showing that Plaintiff's legal action was made in response to the exercise of constitutionally-protected rights, carafem's claims would only be dismissed if carafem failed to "establish[] a prima facie case for each essential element of the claim[s] in the legal action." Tenn. Code Ann. § 20-17-105(b). As this Court has already ruled, carafem is entitled to a preliminary injunction for the asserted FACE Act claims based on their likelihood of success on the merits of that claim.[5] (Dkt. 65 at 6–7.) Defendants' Memorandum rehashes the same arguments presented at the hearing on carafem's motion for preliminary injunction—*i.e.*, that Defendants did not obstruct or interfere with any persons from accessing reproductive services (*see* Dkt. 75 at 8)—which carafem addressed as part

---

[5] To the extent the Court's Order granting in part carafem's motion for preliminary injunction was based on information outside the pleadings, this analysis is unaffected. In deciding a TPPA petition, the Court may consider "supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d).

of the preliminary injunction proceedings and which this Court already rejected. (Dkt. 49 at 1–3; Dkt. 65 at 6–7.) Carafem will not re-litigate those same arguments here. Put simply, the Court's prior ruling granting in part carafem's motion for a preliminary injunction is dispositive as to Defendants' arguments for dismissal of the FACE Act claim under the TPPA.

### D. Carafem has also made a *prima facie* case for each element of its trespass and nuisance claims.

Carafem has also already made a *prima facie* case for its trespass and nuisance claims in the briefing and oral argument, and Defendants' conclusory and unsupported statements that carafem has not, (Dkt. 75 at 7), do not satisfy Defendants' burden under the TPPA burden-shifting framework. The elements of a trespass claim are: "(1) an intentional entry or holdover (2) by the defendant or a thing; (3) without consent or legal right." *Twenty Holdings, LLC v. Land S. TN, LLC*, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019). This Court found, after a briefing and oral argument, that:

> The evidence shows that on July 26, 2022, ten to twenty OSA members and affiliates, including Defendants Storms, Boyd, and Linam, stood immediately outside the entrance to the medical building where carafem is located. They remained there for several minutes and refused to leave when requested to do so. The group spoke with security guards, requested access to the building so they could "talk to the abortion clinic," and despite being asked to leave the property, remained in the area of the building entrance until police ordered them to move across the street.

(Dkt. 65 at 6.) These findings describe Defendants' entry onto private property and refusal to leave and show that a *prima facie* case of trespass has already been made through the preliminary injunction briefing and hearing.

The evidence introduced in the preliminary injunction hearing also establishes a *prima facie* case for private nuisance. A private nuisance is "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable . . .

[and] extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002) (alterations in original). Carafem has submitted into evidence numerous declarations showing that Defendants' conduct frightened and intimidated carafem's staff and patients and rendered it impossible, at times, to carry on its business of providing reproductive health services to its patients. (*See generally* Dkt. 19; Dkt. 49-2; Dkt. 53.) Indeed, this Court has already found Defendants' "presence interfered with persons attempting to access the building." (Dkt. 65 at 6–7.) This evidence more than meets the standard of rendering the "ordinary use or physical occupation" of carafem's suite "uncomfortable."

## II.     Carafem has sufficiently stated a FACE Act claim.

In addition to their unsuccessful efforts to enforce Tennessee civil procedure on federal courts, Defendants make some arguments properly addressed in a motion to dismiss, namely that the Amended Complaint fails to properly state a claim under the FACE Act and for trespass and nuisance. These arguments lack any legal basis. First, as noted above, Defendants' argument that carafem fails to state a FACE Act claim ignores this Court's holding that carafem is likely to succeed on the merits of its FACE Act claim. (Dkt. 65 at 6–7.) Moreover, there are no arguments within Defendants' motion that can be reasonably interpreted as attacking the sufficiency of carafem's allegations. Defendants argue that carafem's allegations of obstruction are untrue, (Dkt. 75 at 8), but the Court must assume the allegations in the Amended Complaint are true in ruling on Defendants' Rule 12(b)(6) motion, *Dougherty*, 905 F.3d 971 at 978. In short, Defendants have provided no reason for the Court to dismiss carafem's FACE Act claims.

## III.    Carafem has sufficiently stated a trespass claim.

Trespass is "an unauthorized entry upon the land of another." *City of Townsend v. Damico*, 2014 WL 2194453, at *3 (Tenn. Ct. App. May 27, 2014). To be held liable for trespass,

Defendants "need not have contemplated any damage to the plaintiff resulting from the intentional entry." *See Twenty Holdings, LLC*, 2019 WL 4200970, at *9 (quoting 75 Am. Jur. 2d Trespass § 23). The Tennessee legislature defined "trespasser" as "a person who enters or remains on the real property of another without actual or implied permission, or a person who engages in conduct that constitutes a criminal trespass offense under §§ 39-14-405–39-14-407." Tenn. Code Ann. § 29-34-208(a)(2). In turn, the Tennessee statute prohibiting criminal trespass defines it as "enter[ing] or remain[ing] on property, or any portion of property, without the consent of the owner." Tenn. Code Ann. § 39-14-405(a). The relevant municipal ordinance provides that it is a trespass for any person "to fail to promptly leave the premises when requested to leave by the owner, lessee or person in charge of the property." Mt. Juliet Ord. § 16–43(b). It is uncontested that carafem has alleged all of the elements of a trespass claim under any of these definitions.[6] Instead, Defendants assert that carafem does not have standing to bring the claim, and that Defendants were justified in their trespass under the defense of necessity.

**A. Carafem has standing to bring a trespass claim.**

To the extent Defendants challenge carafem's standing to bring this trespass claim, such challenge is unfounded. Broadly, standing requires the plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Those elements are clearly met here. As detailed in the Amended Complaint, (Dkt. 38 ¶¶ 17–18, 21–29, 33–40), carafem operates out of the Providence Pavilion medical office building at issue, and Defendants' trespass caused harm to carafem by disrupting

---

[6] Although Defendants make the conclusory statement that carafem "is unable to make a prima facie case for trespass to land," (Dkt. 75 at 9), Defendants fail to identify any element of trespass that is missing and instead focus their arguments on standing and their claimed defense.

its operation and patient care. Carafem's injuries will be redressed by a favorable decision, and an injunction will prevent Defendants from harming carafem in this way in the future. Carafem thus has standing to bring its trespass claim. *See Warth v. Seldin*, 422 U.S. 490, 508 (1975) ("[A] plaintiff . . . must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention").[7]

It is undisputed that at common law, tenants have standing to bring trespass claims. Tennessee law is clear on this point: renters, tenants and lessees can bring (and succeed) in claims for trespass. *See, e.g., Ellis v. Pauline S. Sprouse Residuary Tr.*, 280 S.W.3d 806, 808 (Tenn. 2009) (noting that the Tennessee Court of Appeals upheld a jury award for a lessee for damages caused by the property owner's trespass); *see also Morrow v. Metro. Gov't of Nashville & Davidson Cnty.*, 2020 WL 5106763, at *3 (M.D. Tenn. Aug. 31, 2020) ("Tennessee courts have long recognized, however, that a trespass action may be brought by a person who is either in actual possession of the property at issue, or in constructive possession by virtue of holding legal title."). "A trespass action protects an owner ***or tenant's*** right to exclusive possession." *Whitford v. Vill. Groomer & Animal Inn, Inc.*, 2021 WL 4240989, at *5 (Tenn. Ct. App. Sept. 17, 2021) (internal quotations and citations omitted, emphasis added)). The general rule is that an aggrieved party with a possessory interest has standing to bring a trespass claim. 7 Am. Law of Torts § 23:7; 87 C.J.S. trespass § 23. Carafem has adequately alleged that it had a legal interest in the property, suffered an injury in fact that is fairly traceable to the conduct of the Defendants, and that is likely

---

[7] Defendants' citation of cases relating to organizational standing are inapposite. (*See* Dkt. 75 at 10 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972), and others).) Carafem brings this suit on its own behalf.

to be redressed by a favorable judicial decision. Defendants' claim to the contrary is, at best, careless.[8]

### B. Necessity does not defeat carafem's trespass claim.

Defendants' attempt to avoid liability through the defense of necessity is, likewise, not grounded in any law. Necessity is a justification excluding **criminal responsibility**. Tenn. Code Ann. § 39-11-609. Defendants fail to cite—and carafem's counsel was unable to locate—any use of this defense to escape civil liability. *Accord Damico*, 2014 WL 2194453, at *6 ("Our research has uncovered no other Tennessee case utilizing the language of 'justifiable cause' in regard to a civil trespass. We do generally observe, to the extent pertinent to the specific facts under review, that a defense of private necessity exists to a charge of **criminal trespass**[.]" (emphasis added)).

Even if the affirmative defense of necessity was available to guard Defendants from civil liability, it is not properly raised at this stage. "Generally, a plaintiff is not required to anticipate and plead facts to avoid an affirmative defense. Thus, dismissal on the grounds of an affirmative defense is appropriate only if the operative pleading shows on its face that the claim is barred by the defense." *Pridy v. Piedmont Nat. Gas Co.*, 458 F. Supp. 3d 806, 819 (M.D. Tenn. 2020) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Nothing in the Amended Complaint provides any support for Defendants' claim of necessity.

### IV. Carafem has sufficiently stated a nuisance claim.

Defendants also claim carafem has not properly stated a claim for nuisance, but that argument, too, is unavailing. "Tennessee courts have defined a private nuisance as 'anything

---

[8] Defendants' misleadingly incomplete quotation from a single case from the 1800s concerning the revival of an action upon a party's death—which notes in dicta that "one tenant in common could not sue alone for trespass to land, *(though the authorities are said to be in conflict on the question)*, yet, if one sue, advantage could only be taken by plea in abatement," *Mayfield v. Stephenson*, 65 Tenn. 397, 402 (1873) (emphasis added)—is inapposite to the facts at hand because carafem is not a tenant in common. (*See* Dkt. 75 at 9.)

which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable and extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.'" *W.J. Curry & Sons*, 92 S.W.3d at 364 (quoting *Pate v. City of Martin,* 614 S.W.2d 46, 47 (Tenn. 1981) (cleaned up)). There can be no question that the Amended Complaint alleges the elements of a nuisance claim.

Defendants argue that their actions did not rise to the level of creating a nuisance, but this argument goes to the merits rather than the sufficiency of carafem's nuisance claim. "Depending on the surroundings, activities that constitute a nuisance in one context may not constitute a nuisance in another." *Id.* Accordingly, "[c]ourts must make an individualized assessment in order to determine whether an activity or use of property amounts to a private nuisance, taking into consideration the surroundings; the nature, utility, and social value of the use; the harm involved; and its effect on a reasonable person." *Tipton v. CSX Transp., Inc.*, 2016 WL 11501426, at *16 (E.D. Tenn. July 7, 2016). This is a determination that should be made at trial, and notably, each[9] of the cases Defendants rely upon to support their argument for the dismissal of carafem's nuisance claim support that the determination of whether a particular activity constitutes nuisance should be left to the fact-finder. *E.g.*, *Caldwell v. Knox Concrete Prods., Inc.*, 391 S.W.2d 5, 11 (1964) (reversing directed verdict because "the issue of whether the noise from defendant's plant operations constituted a nuisance in fact should have been submitted to the jury"); *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 425 (Tenn. 2013) (reversing involuntary dismissal because plaintiff "presented a prima facie case of nuisance"); *Adams v. Adient US LLC*, 2022 WL 4131768,

---

[9] Defendants also cite *Hattner v. United States*, 293 F. 381 (6th Cir. 1923), but it addresses criminal nuisance punishable by the National Prohibition Act and is not relevant here.

at *9 (W.D. Tenn. Sept. 12, 2022) (denying motion to dismiss private nuisance claim because complaint allegations were sufficient to support a claim under Tennessee law); *Ryan v. Soucie*, 2019 WL 3238642, at *3–5 (Tenn. Ct. App. July 18, 2019) (affirming denial of motion to dismiss where plaintiff had adequately stated nuisance claim), and at *6–8 (affirming judgment in plaintiff's favor on nuisance claim after bench trial).[10]

Finally, Defendants' argument that the narrowly-drawn injunctive relief awarded to carafem constitutes an impermissible prior restraint is unsupported by law and logic. The nuisance claim states that Defendants' trespass and the amplification of the noise at a volume that forced patients and staff within the clinic to yell to be heard disturbed the reasonable and comfortable use of the facility by carafem patients and staff and interfered with carafem's ability to provide medical care to patients. The content of the message is irrelevant.

Defendants' arguments concerning carafem's nuisance claim all concern the merits of the claim rather than the sufficiency of the allegations, the Court should decline to dismiss carafem's nuisance claim.

## **CONCLUSION**

For the foregoing reasons, carafem respectfully requests that this Court deny Defendants' Motion to Dismiss the Amended Complaint.

---

[10] Defendants' assertion that carafem's nuisance claim "occurred on a single occasion on July 28, 2022," (Dkt. 75 at 12), mischaracterizes the Amended Complaint, which alleges nuisance beginning on July 26, 2022, (Am. Compl. ¶¶ 61–63).

17
Case 3:22-cv-00565   Document 77   Filed 10/06/22   Page 17 of 19 PageID #: 584

Date: October 6, 2022

                                              Respectfully submitted,
                                              */s/ Sarah B. Miller*
                                              Sarah B. Miller
                                              Angela L. Bergman
                                              Allison Wiseman Acker
                                              Briana T. Sprick Schuster
                                              **BASS, BERRY & SIMS PLC**
                                              150 Third Avenue South, Suite 2800
                                              Nashville, TN 37201
                                              (615) 742-6200
                                              (615) 742-6293 (facsimile)
                                              smiller@bassberry.com
                                              abergman@bassberry.com
                                              allison.acker@bassberry.com
                                              briana.sprick.schuster@bassberry.com

                                              *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

  I hereby certify that a true and exact copy of the foregoing will be served this 6th day of October, 2022 by operation of the Court's CM/ECF system or via U.S. Mail, first class postage prepaid, on the parties as indicated below:

*Via U.S. Mail*
Aaron J. Hurley
11401 Washington Pl Apt J
Los Angeles, CA 90066-5051

*Via U.S. Mail*
Chester "Chet" Gallagher
1145 Holloway Road
Lebanon, TN 37090

*Via U.S. Mail*
Rickey Nelson Williams, Jr.
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via U.S. Mail*
Edmee Chavannes
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via U.S. Mail*
Bevelyn Z. Williams
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via U.S. Mail*
At The Well Ministries, Inc.
c/o Bevelyn Williams, Registered Agent
9100 Integra Preserve Ct., #316
Ooltewah, TN 37363

*Via CM/ECF Notice*
Larry L. Crain
5214 Maryland Way, Suite 402
Brentwood, TN 37027
larry@crainlaw.legal

Stephen M. Crampton
PO Box 4506
Tupelo, MS 38803-4506
scrampton@thomasmoresociety.org

*Counsel for Defendants Operation Save America, Jason Storms, Matt Brock, Coleman Boyd, Frank "Bo" Linam, and Brent Buckley*

               /s/ Sarah B. Miller

19
Case 3:22-cv-00565   Document 77   Filed 10/06/22   Page 19 of 19 PageID #: 586