IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FEMHEALTH USA, INC., d/b/a carafem, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:22-cv-00565 |
| v. | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |
| RICKEY NELSON WILLIAMS, JR., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff FemHealth USA, Inc. d/b/a carafem ("carafem" or "Plaintiff") is a non-profit organization that provides women's reproductive health services. Plaintiff brings this action against twelve defendants asserting claims for violation of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248, (the "FACE Act"), and state law claims for trespass, assault, and nuisance. (Am. Compl., Doc. No. 38).[1] The twelve named defendants are two corporations, At the Well Ministries, Inc. ("ATW"), and Operation Save America National Inc. ("OSA"), and certain of their members. Defendants Bevelyn Z. Williams, Edmee Chavannes, and Rickey Nelson Williams, Jr. are alleged to be associated with ATW.[2] (¶¶ 3-7). Defendants Jason Storms is alleged to be the national director of OSA, and Chester Gallagher, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, and AJ Hurley are alleged to be OSA members. (¶¶ 8-16).

Pending before the Court are two motions to dismiss. The first motion is by Defendants OSA, Jason Storms, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, and Brent Buckley (the "OSA

---

[1] Unless otherwise stated, facts stated herein are as alleged in the Amended Complaint (Doc. No. 38), which will be cited as "¶ __."

[2] Plaintiff alleges Bevelyn Z. Williams and Edmee Chavannes are founders and owners of ATW, and Rickey Nelson Williams, Jr. is a full-time employee of ATW. (Am. Compl., Doc. No. 38 at ¶¶ 3-7).

Defendants").[3] (Doc. No. 74). Plaintiff responded to this motion (Doc. No. 77), and the OSA Defendants filed a reply (Doc. No. 80). The second motion to dismiss is by Defendant AJ Hurley. (Doc. No. 86). Plaintiff also responded to this motion (Doc. No. 93), Hurley filed a reply (Doc. No. 94), and, with leave of Court, Plaintiff filed a sur-reply (Doc. No. 100).

Also before the Court is a motion for oral argument filed by the OSA Defendants and Hurley. (Doc. No. 109). The Court finds oral argument is not necessary to resolve the pending motion. Accordingly, the request for oral argument is DENIED. For the reasons stated herein, the motions to dismiss are DENIED.

## I. BACKGROUND

Plaintiff carafem is a non-profit organization that provides women's reproductive health services through a network of health centers. (¶ 17). Plaintiff alleges Frank "Bo" Linam and other members of OSA come to carafem several times each week to interrupt carafem's patient services (¶ 13). The claims asserted in the Amended Complaint arise out of protests outside the carafem health center at 5002 Crossing Circle in Mt. Juliet, Tennessee (the "Mt. Juliet Center") on July 26-28, 2022. At that time, carafem was providing in-person reproductive health services, including abortions, birth control, and testing for sexually-transmitted infections.[4] (¶ 1).

On July 26, 2022, a group of approximately 150 OSA members and affiliates gathered on the streets and sidewalks in front of the parking lot of the medical building in which the Mt. Juliet Center is located. (¶ 20). Members of the group held signs depicting graphic images, used megaphones, and accosted vehicles entering the parking lot in an attempt to disrupt carafem's operations. (*Id.*). After

---

[3] The Court notes that the Amended Complaint also refers to a group identified as the "OSA Defendants," which, in addition to the Defendants joining in the motion to dismiss, also includes Defendants Chester Gallagher and AJ Hurley.

[4] The Court understands from subsequent filings that Plaintiff no longer provides in-person health services at this location.

several hours, a group of approximately seven men, including Defendants Jason Storms and Chester Gallagher approached the front entrance of the medical building.[5] (¶ 21). They were confronted by building security, who instructed them to leave the property. The men refused to move from the front doors and blocked the entrance and exit from the building for several minutes. (¶ 22). Mt. Juliet police responded and eventually persuaded the men to leave the medical building property. (¶¶ 24-26). During this incident, carafem went on "lockdown" for approximately 30 minutes. (¶ 23).

Police informed carafem staff that the OSA members stated that they intended to return to the medical building each day for the remainder of the week, planned to "escalate" activities on Friday, July 29, 2022, and planned to "fill the hallways" of the clinic "sometime soon" and that they had "men out here who are willing to do what needs to be done." (¶ 27).

On July 27, 2022, approximately 30-35 individuals believed to be members or affiliates of OSA protested on the sidewalks outside the medical building property with graphic signs and megaphones. (¶ 30). Plaintiff states the amplified sound could be heard from inside patient rooms and that staff was forced to yell to complete patient care visits. (*Id.*).

On July 28, 2022, approximately 60 individuals believed to be members or affiliates of OSA, including Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee Chavannes (who are associated with ATW), arrived at the medical building. (¶ 32). The individuals again protested with graphic signs and megaphones. (*Id.*). The protesters amplified the sound of a crying baby at a volume that made it difficult for patients to hear carafem staff during their healthcare appointments. (*Id.*). At approximately 11:20 a.m. Defendants Rickey Williams, Jr., Bevelyn Williams, and Edmee

---

[5] Although the Amended Complaint does not specifically name Hurley as one of the men who entered the medical building property on July 26, 2022, in his Reply Brief, Hurley stated that he did not dispute that he did so. (*See* Doc. No. 94 at 5).

Chavannes entered the building, attempted to enter the clinic, and subsequently blocked the clinic entrance. (¶¶ 33-35). They were eventually escorted from the building by police.

The following day, July 29, 2023, Plaintiff initiated this action and sought a temporary restraining order against the Defendants. (Doc. Nos. 1, 2). The Court granted the motion for temporary restraining order and later entered a preliminary injunction. (Doc. Nos. 9, 66). Defendants Coleman Boyd, Matthew Brock, Brent Buckley, Frank Linam, Jason Storms, and OSA appealed the preliminary injunction. (*See* Doc. No. 67). The appeal remains pending.

The OSA Defendants and Defendant AJ Hurley moved to dismiss the Amended Complaint. (Doc. Nos. 74, 86). These motions are fully briefed and ripe for review. (*See* Doc. Nos. 75, 77, 80, 86, 93, 94, 100).

## II.     STANDARD OF REVIEW

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with

4

the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. FACE Act

1. Standing

Defendant AJ Hurley moves to dismiss the FACE Act claim on grounds that Plaintiff lacks statutory standing to bring claims under 18 U.S.C. § 248. (Doc. No. 86-1). As relevant to the instant motion, the FACE Act provides:

> (a) **Prohibited activities**. – Whoever –
> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;
> ….
> (3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services, or intentionally damages or destroys the property of a place of religious worship,
>
> shall be subject to the penalties provided in subsection (b) and the civil remedies provided in subsection (c), except that a parent or legal guardian of a minor shall not be subject to any penalties or civil remedies under this section for such activities insofar as they are directed exclusively at that minor.
> ….
>
> (c) **Civil remedies**. –
> (1) **Right of action**. –
> (A) **In general** – Any person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action for the relief set forth in subparagraph (B), except that such an action may be brought under subsection (a)(1) only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services, and such an action may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship.

18 U.S.C. § 248.

5

Hurley contends that Section 248(c)(1) allows for claims to be brought only by natural persons and that "Plaintiff carafem is not an 'aggrieved person'" under the statute. (Doc. No. 86-1 at 3-4). His initial memorandum provides no further exposition of this argument. Plaintiff responds that carafem is plainly a "person" under the statute, pointing to Congress' directive that "in determining the meaning of any Act of Congress, unless the context indicates otherwise … the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." (Doc. No. 93 at 5 (citing 1 U.S.C. § 1)).

In his reply memorandum, Hurley argues that the context of FACE Act indicates that Congress intended "person" to mean only "natural persons." First, Hurley points to section 248(a)(2), which provides for actions to be brought by "an entity that owns or operates [] a religious place of worship." (Doc. No. 94 at 1). He reasons that under the interpretive canon "*expressio unius est exclusio alterius* – the express mention of one thing excludes others," Congress' choice to specifically grant standing to entities that own or operate a religious place of worship without a parallel grant of standing to entities that own or operate reproductive healthcare facilities indicates that "aggrieved person" includes only natural persons. (*Id*.). Hurley also points to the definitions or context of certain terms that he contends indicate the use of "person" in the FACE Act refers only to "natural persons." Finally, he argues that the legislative history of the Act confirms that the civil remedies of Section 248(c)(1) are available only to natural persons. (*Id*. at 2).

The parties cite only one case that has directly considered the issue – *Planned Parenthood of Se. Penn., Inc. v. Walton*, No. Civ. A 95-2813, 1997 WL 734012 (E.D. Penn. Nov. 14, 1997).[6] The *Walton* court, considering arguments virtually identical to those presented by Hurley, found that "that

---

[6] Plaintiff cites a number of cases upholding civil claims and criminal charges brought under the FACE Act for threatening, intimidating, and obstructing clinics and facilities. (Doc. No. 100 at 3 (collecting cases)). Defendant has not cited any decision holding that only natural persons are authorized to bring claims under Section 248(c)(1).

under the plain language of the statute itself, the plaintiff corporation qualifies as a 'person involved in providing or seeking to provide ... services in a facility that provides reproductive health care services' within the meaning of § 248(c)(1)(A)." *Id*. at *2. The Court reasoned that the lack of symmetry in the provision of standing to certain fictional persons was to allow entities that own or operate a religious place of worship to bring claims without reference to principles of organizational standing; it did not mandate a conclusion that claims under the Face Act were otherwise limited to natural persons. *Id*.

The Court agrees with the court in *Walton*: that the inclusion of a specific provision for entities that own or operate a religious place of worship does not indicate that the word "person" means only "natural person," such that the definitions in 1 U.S.C. § 1 do not apply. While it is true that in certain contexts the "express mention of one item of [an] associated group or series excludes others left unmentioned" (*expressio unius est exclusio alterius*), the Court finds no reason to apply that canon of construction here. As explained by the Supreme Court, "[t]he force of any negative implication [] depends on context" and "applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded.'" *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 302 (2017) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013), and *Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 81 (2002)).

The Court is not persuaded that the specific provision of standing to bring claims under subsection (a)(2) for an entity that owns or operates a religious place of worship supports a "sensible inference" that the provision of standing to bring claims under subsection (a)(1) to "a person involved in providing or seeking to provide … services in a facility that provides reproductive health services" excludes non-natural persons. A more natural reading of the subsection is that it clarifies that entities that own or operate a "religious place of worship" referenced in Section (a)(2) may also bring claims even if they are not themselves deemed to be exercising a First Amendment right of religious freedom.

7

No such clarification is necessary with regard to entities "providing or seeking to provide … services in a facility that provides reproductive health services."

Accordingly, the express provision of standing for entities that own or operate places of worship does not require, or even suggest, that an entity providing services in a reproductive health facility is not a "person" entitled to bring a claim under the civil remedies provision of the FACE Act.

Hurley also argues that certain terms of the FACE Act are defined with reference to a "person" that can only mean a "natural person." (Doc. No. 94 at 1). For example, the statute defines "interfere with" as "to restrict a person's freedom of movement." (*Id*. (citing 18 U.S.C. § 248(e)(2)). Hurley argues that this use of "person" must be limited to "natural person," presumably because a corporation does not have "freedom of movement" and that the use of "person" in the entire statute must, therefore, be limited to natural persons. He makes a similar argument regarding "intimidate," which is defined as "to place a person in reasonable apprehension of bodily harm to him- or herself or to another." (*Id*. (citing 18 U.S.C. § 248(e)(3)). Finally, he asserts that he terms "threat of force" and "physical obstruction" refer only to actions taken against natural persons.

Hurley's argument on this front is equally unpersuasive. True, it is difficult to imagine that a non-natural person could be "interfered with" in the sense that it could be restricted in freedom of movement in the traditional sense, such as being prevented from entering or exiting a building. The same is not the case for "intimidate" where a non-natural person could have "reasonable apprehension of bodily harm to … another." But in the overall context of the statute, the meaning of these terms is not dispositive of the meaning of "person." These terms are found in a list of prohibited conduct whereby whoever "by force or threat of force or by physical obstruction intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person" shall be subject to specified penalties and civil remedies. 18 U.S.C. § 248(a)(1). Even if a non-natural person cannot be interfered with in the sense of obstructing physical movement, it can be subject to injury

8

and intimidation. Therefore, the prohibition of "interfere[nce]" as one of a list of prohibitions does not suggest person has meaning other than that provided in 1 U.S.C. § 1. The final two phrases, "threat of force" and "physical obstruction," easily apply to legal as well as natural persons.

The Court concludes that, under the plain language of the FACE Act, Plaintiff carafem, a non-profit corporation, qualifies as a "person involved in providing or seeking to provide services in a facility that provides reproductive health services." Because the terms of the statute are unambiguous, the Court need not consider legislative history. *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("[W]hen … the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.") (internal quotation omitted).

2. Failure to State a Claim

The OSA Defendants argue Plaintiff fails to state a claim under the FACE Act. For the reasons stated in the Court's ruling on the motion for preliminary injunction, Plaintiff has stated a claim for relief under the FACE Act. The OSA Defendants' motion to dismiss this claim for failure to state a claim will be DENIED. (*See* Memorandum and Order Granting Preliminary Injunction, Doc. Nos. 65, 66 (finding Plaintiff stated a claim under the FACE Act and showed a likelihood of success on the merits of the claim)).

B. **Tennessee Public Participation Act**

The OSA Defendants seek to apply the procedural mechanism of the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101, *et seq*. (Doc. No. 75 at 3). Specifically, Defendants rely on the provisions of the TPPA that allow a defendant to petition for dismissal of a legal action "filed in response to a party's exercise of the right of free speech, right to petition, or right of association." Tenn. Code Ann. § 20-17-104(a). Under the TPPA, once the defendant makes out a prima facie case that he was exercising his First Amendment rights, "the court shall dismiss the legal action unless [the plaintiff] establishes a prima facie case for each essential element of the claim

9

in the legal action." *Id*. at § 20-17-105. The OSA Defendants contend Plaintiffs' claims are "merely pretexts for censoring and suppressing these Defendants' message in violation of the [TPPA]," that Plaintiff cannot establish a prima facie case for its claims, and, therefore, the claims must be dismissed. (Doc. No. 75 at 3). Plaintiff argues that the procedural mechanisms of the TPPA do not apply in federal court, and that even if they did apply, it has established a prima facie case on each of its claims. (Doc. No. 77 at 4).

The Sixth Circuit has not considered the applicability of the dismissal procedures in the TPPA or other anti-SLAPP statutes in federal court.[7] However, the majority of courts in this circuit have determined that the procedural mechanisms of the TPPA and similar anti-SLAPP statutes conflict with the procedures established in the Federal Rules of Civil Procedure governing dismissal of cases, and are, therefore not available in federal court. *See Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022); *Hughes v. Gupta*, 613 F. Supp.3d 1054, 1057 (W.D. Tenn. 2021); *Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637, at * 6 (M.D. Tenn. Nov. 30, 2021); *Lampo Group, LLC v. Paffrath*, No. 3:18-cv-01402, 2019 WL 3305143, at * 3 (M.D. Tenn. Jul. 23, 2019)).

The Court agrees with the reasoning of these decisions. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). "[W]hen a duly adopted Federal Rule of Civil Procedure collides with a state procedural edict in a federal court: the state requirement yields, and the Federal Rule prevails." *Mucerino*, 2021 WL 5585637, at * 6; *see also, Shady Grove*, 559 U.S. at

---

[7] "SLAPP" stands for "strategic lawsuits against public participation." *See Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022). The stated purpose of the TPPA is "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law." Tenn. Code Ann. § 20-17-102.

10

398 (holding that when a valid Federal Rule of Civil Procedure answers the question in dispute, the federal rule applies over a conflicting state law).

The Tennessee Court of Appeals has described the TPPA as "combin[ing] the procedural mechanism of a Tennessee Rule of Civil Procedure Rule 12.02(6) motion to dismiss, with … 'a procedure where the trial court evaluates the merits of a lawsuit using a summary-judgment like procedure at an early stage of litigation.'" *Flade v. City of Shelbyville*, No. M2022-00553-COA-R3-CV, 2023 WL 2200729, at *24 (Tenn. Ct. App. Feb. 24, 2023). The court in *Flade* also observed that the TPPA does not create a private right of action or affect the substantive law governing any asserted claim. *Id*.

The Court agrees with the other courts to have considered the issue: the burden-shifting framework established by the TPPA is procedural and in direct conflict with Federal Rules of Civil Procedure 8 and 12, which provide the criteria for assessing the sufficiency of a pleading. There is no real dispute that the Federal Rules of Civil Procedure at issue are valid. *See Lampo*, 2019 WL 3305143, at * 4 (finding these Federal Rules of Civil Procedure valid and noting that in *Shady Grove*, 559 U.S. at 407, the Supreme Court recognized that it has "rejected every statutory challenge to a Federal Rule that has come before us").

For these reasons, the Court concludes that the procedural mechanisms established by the TPPA do not apply in federal court, and the OSA Defendants' motion to dismiss on these grounds will be DENIED.

**C.     Supplemental Jurisdiction**

Defendant Hurley argues the Court "cannot exercise supplemental jurisdiction over any state law claims if and when it dismisses the sole federal claim against Hurley and the other OSA Defendants because the state law claims will predominate and they will be based on different factual matters than the remaining FACE claim." (Doc. No. 86-1 at 7).

11

Because the court has not dismissed the federal claims, Hurley's motion to dismiss the state law claims will be DENIED. *See* 28 U.S.C. § 1367(a) (providing that the district court has supplemental jurisdiction over "all other claims that are so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

**D.     Trespass**

1. The OSA Defendants

The OSA Defendants argue the claim for trespass must be dismissed for three reasons: (1) Plaintiff cannot establish a prima facie case for trespass to land because it is a tenant; (2) Plaintiff lacks standing to bring the trespass claim; and (3) Defendants are entitled to the defense of necessity. None of these arguments has merit.

Under Tennessee law, elements of a trespass claim are: "(1) an intentional entry or holdover; (2) by the defendant or a thing; (3) without consent or legal right." *Twenty Holdings, LLC v. Land S. TN*, No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019).

Defendants' argument that Plaintiff is "unable to make a prima facie case for trespass to land" because it does not own the building and the claim is not joined by the building manager or owner, or other tenants of the medical building is not supported by persuasive authority.[8] The OSA Defendants rely on *Mayfield v. Stephenson*, 65 Tenn. 397, 401-02 (1873) for the proposition that "one tenant in common could not sue alone for trespass to land." (Doc. No. 75 at 9). Nothing in the Amended Complaint suggests that Plaintiff's legal interest in the property is as a tenant in common.

---

[8]     In their reply brief the OSA Defendants cite cases concerning a reasonable expectation of privacy in the context of warrantless searches and seizures. (*See* Doc. No. 80 at 5 (citing *U.S. v. Sweeney*, 821 F.3d 893, 902 (7th Cir. 2016), and *State v. Talley*, 307 S.W.3d 723, 734 (Tenn. 2010)). These cases have no bearing on Plaintiff's ability to bring a claim for trespass.

12

Moreover, even in 1873, the Tennessee Supreme Court recognized that "the authorities are said to be in conflict on the issue" of whether one tenant in common could sue for trespass to land. *Mayfield*, 65 Tenn. at 402.

The law has developed is the 150 years following the *Mayfield* decision. Currently, it is recognized that "a trespass action protects an owner or tenant's right to exclusive possession." *Whitford v. Vill. Groomer & Animal Inn, Inc.*, No. M2020-00946-COA-R3-CV, 2021 WL 4240989, at *5 (Tenn. Ct. App. Sept. 17, 2021). "Tennessee courts have long recognized [] that a trespass action many be brought by a person who is either in actually possession of the property at issue, or in constructive possession by virtue of holding legal title." *Morrow v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:19-cv-00351, 2020 WL 5106763, at *3 (M.D. Tenn. Aug. 31, 2020). The Amended Complaint adequately alleges that Plaintiff has legal interest in the property.

Somewhat relatedly, the OSA Defendants contend Plaintiff does not have standing to assert a claim for trespass. (Doc. No. 75 at 9-10 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975), and *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)). The briefing is void of any developed legal argument, and the Court struggles to surmise the basis for the challenge to standing.

Standing requires the plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The allegations clearly show that Plaintiff satisfied these requirements.

Finally, the OSA Defendants argue that a claim for trespass "would not lie against these Defendants because they are entitled to the defense of necessity." (Doc. No. 75 at 10). Because the affirmative defense relies on facts outside the complaint, it cannot be resolved at the motion to dismiss stage. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("when evaluating an

affirmative defense in a motion to dismiss, a court must still only look to the facts alleged in the plaintiff's complaint").

In summary, the OSA Defendants have not raised any valid grounds to dismiss the claim for trespass. Accordingly, the motion to dismiss this claim will be DENIED.

2. Hurley

Like the argument presented by the OSA Defendants, Defendant Hurley argues that a claim for trespass requires that the owner or tenant has the right to "*exclusive* possession" of the property at issue and, because Plaintiff's offices are located in a multi-tenant building, the trespass claim must be dismissed. (Doc. No. 86-1 at 8, Doc. No. 94 at 4). In support of this argument, Defendant Hurley cites cases in which the courts refer the "owner or tenant's right to exclusive possession" when discussing a claim for trespass. *See Whitford*, 2021 WL 4240989, at *5; *Heatley v. Gaither*, No. M2018-00461-COA-R3-CV, 2018 WL 6706287, at *4 (Tenn. Ct. App. Dec. 19, 2018); *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). But none of the cited cases stand for the proposition that a tenant in a multi-occupancy building cannot brings claims for trespass of the common areas of the property, particularly where the alleged trespasser engages in acts inconsistent with the purposes of the business or facility.

As stated above, Plaintiff has sufficiently alleged a legal interest in the property and alleged the elements of a claim for trespass. At this stage in the litigation, this is sufficient. Therefore, Defendant Hurley's motion to dismiss the trespass claim will be DENIED.

E. **Nuisance**

"Tennessee Court have defined a private nuisance as 'anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable and extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.'" *Lane v. W.J. Curry & Sons*,

92 S.W.3d 355, 364 (Tenn. 2002) (quoting *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981) (cleaned up). A nuisance may be something that "causes discomfort or inconvenience to the occupants of the property," such as noise. *Id*. at 365.

Plaintiff brings a nuisance claim against the OSA Defendants and Defendant Hurley based on their "entrance on the medical building's property on July 26, 2022" and the amplification of sound at a volume that disturbed the reasonable and comfortable use of the facility by patients and staff. (¶¶ 61-63).

1. The OSA Defendants

The OSA Defendants allege the amplified sound on June 28, 2022, does not rise to the level of nuisance and that any injunction against these Defendants' amplified speech would amount to an unconstitutional prior restraint on speech.[9]

At this stage, the Court does not decide whether Plaintiff will prevail on the claim. All that is required is that it state a plausible claim for relief. Plaintiff's allegation that Defendants projected amplified sound in the direction of its office at such a volume that it interfered with Plaintiff's ability to provide medical care to patients states a plausible claim for relief. (*See* ¶¶ 30, 32). Therefore, the OSA Defendants' motion to dismiss the nuisance claim will be DENIED.

2. Hurley

Defendant Hurley argues Plaintiff fails to state a claim for nuisance based on the entry onto the medical building property because any interference with Plaintiff's use of its office space was caused by Plaintiff itself when it initiated a lockdown with "no reason." (Doc. No. 86-1 at 9). With regard to the amplified sound, Hurley argues that Plaintiff does not allege that he was even at the

---

[9] The OSA Defendants do not address Plaintiff's claims for nuisance based on the entrance onto the medical building's property on July 26, 2022. (*See* Doc. No. 75 at 12 (stating that Plaintiff's claimed nuisance "occurred on a single occasion on July 28, 2022)).

protest on July 27 and 28, 2022, let alone that he was responsible for the amplification.[10] (*Id.* (citing Am. Compl. ¶ 32 (referring generally to OSA protesters))). Finally, Hurley mimics the OSA Defendants' argument that Plaintiff fails to state a claim for nuisance based on the sound amplification, specifically because the amplification was limited to "[t]wo isolated occurrences." (*Id.* at 10).

Hurley's objection to the sufficiency of the nuisance claim is one of degree – *i.e.*, that the conduct complained of was not bad enough or of sufficient duration to constitute a nuisance. At this stage, the Court finds the allegations sufficient to state a claim for nuisance. Further, Plaintiff's claim for nuisance against the "OSA Defendants," sufficiently places Defendant Hurley on notice of the nuisance claim against him for both the entrance into the building on July 26, 2022, and the amplification of sound on July 27 and 28, 2022. Accordingly, Hurley's motion to dismiss the nuisance claim will be DENIED.

## IV. CONCLUSION

For the reasons stated herein, the OSA Defendants' Motion to Dismiss (Doc. No. 74) will be **DENIED**. Defendant Hurley's Motion to Dismiss (Doc. No. 86) will also be **DENIED**. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[10] Hurley does not dispute that he was present on July 26, 2022 and that he entered the medical building property that day. (Doc. No. 94 at 5).