IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEMHEALTH USA, INC., d/b/a CARAFEM,<br>    Plaintiff,<br><br>v.<br><br>RICKY NELSON, JR., et al.,<br>    Defendants. | Civil Action No. 3:22-cv-00565<br>Chief Judge Campbell /Frensley |

## REPORT AND RECOMMENDATION

This action is before the undersigned on Plaintiff's motion for summary judgment against the remaining defendants (Docket No. 174) and other pending matters (Docket Nos. 178, 186) . The motion for summary judgment is fully briefed and ready for disposition. After reviewing the record and the briefs, for the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be **GRANTED** in its entirety.

### I.    BACKGROUND

FemHealth USA, Inc. is a reproductive health organization that does business under the name carafem. Docket No. 1, p. 2. Carafem provides abortion care, birth control, and testing for sexually transmitted diseases through clinics spread across several states. Id. Until recently, carafem operated one of its clinics in a medical office building—known as the Providence Pavilion—in Mt. Juliet, Tennessee, a Nashville suburb. Id. p. 5.

On July 29, 2022, carafem filed its original complaint in this suit under the Freedom of Access to Clinic Entrances Act ("FACE Act" or "Act"). Docket No. 1. The FACE Act creates a private cause of action against "[w]hoever ... by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere

with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services[.]" 18 U.S.C. § 248(a)(1), (c)(1). Carafem named as defendants Operation Save America ("OSA"), Jason Storms, Matthew Brock, Coleman Boyd, Frank Linam, and Brent Buckley ("OSA defendants"), as well as Rickey Williams, Bevelyn Williams, Edmee Chavannes, and At The Well Ministries, Inc. ("ATW"). Docket No. 1, pp. 2-5.

In its amended complaint, carafem alleged that on July 26, 2022, the OSA Defendants approached the Providence Pavilion, "refused to move from the front doors and blocked [the] entrance and exit from the building for several minutes. Docket No. 1, p. 5. According to carafem, the OSA defendants refused to leave until police officers ordered them to move to the sidewalk. Id. p. 6. Carafem claimed that the OSA Defendants' refusal to move from the entrance prevented patients from entering the Providence Pavilion. Docket No. 38-1, p. 4. Carafem further alleged that the OSA defendants told police officers "that they intended to return to the [Providence Pavilion] each day for the remainder of the week, planned to 'escalate' activities on Friday, July 29, 2022, and planned to 'fill the hallways' of the clinic 'sometime soon' and that they 'have men out here who are willing to do what needs to be done.' " Docket No. 38, pp. 6-8.

Carafem alleges that numerous OSA affiliates followed through on the promise to return to the Providence Pavilion. Docket No. 38, pp. 6-8. During an alleged incident on July 28, approximately 60 people associated with OSA arrived at the Providence Pavilion. Id.

While carafem does not allege that the OSA defendants were present on that date, it does assert that the group included several other named defendants, including Rickey Williams, Bevelyn Williams, and Edmee Chavannes (collectively "Individual Defendants"). Id. Plaintiff asserts the Individual Defendants entered the Providence Pavilion and "attempted to enter

2

[carafem's] clinic by ringing the front desk via an intercom system, pretending to seek services from the clinic." Docket No. 38, p. 8. After being informed that they could not enter the clinic, Bevelyn Williams stated that "either they [are] gonna let us in or we take this whole building down. It's up to them." Id. at p. 9. Carafem asserts claims against all defendants under the FACE Act (Count I). It asserts a state law claim for trespass against land against the OSA defendants (Count II) and against the ATW defendants (Count III). It asserts a claim for assault against the ATW defendants (Count IV). Finally, it asserts state law claims for nuisance against all defendants in Counts V and VI.

The district judge dismissed the claims against the OSA Defendants pursuant to the terms of a settlement agreement. Docket No. 135. Carafem now moves for summary judgment against remaining individual ATW defendants Rickey Williams, Bevelyn Williams, and Edmee Chavannes. Docket No. 178.

In support of its motion, carafem submitted as evidence its statement of undisputed material facts, the sworn declarations of various individuals at the July 28, 2022, protest, copes of requests for admissions and other discovery requests, video footage of the protest, and filings and other documents from other court cases. Docket No. 181, Docket Nos. 181-1-20. The evidence proffered by Plaintiff reveals the following.

Carafem is a nonprofit organization that provides women's reproductive healthcare. Docket No. 180, p. 1. In July 2022, carafem operated a clinic ( "Health Center") in Mt. Juliet, Tennessee. Id. Defendants reside in the State of Tennessee but have participated in other obstructions and threats to reproductive healthcare facilities across the United States. Id. at p. 3. Chavannes and B. Williams are known among reproductive healthcare providers as being frequent disrupters of healthcare provision. Id. B. Williams and Chavannes are co-founders, and R.

Williams is an employee, of At The Well Ministries, Inc., a New York Corporation with a principal place of business in Ooltewah, Tennessee. Docket No. 180, p. 2. Defendants B. Williams and Chavannes utilize ATW to fund, promote, and execute FACE Act violations around the country. Id. ATW is also a defendant in this action but has never entered an appearance. Docket No. 38.

On July 28, 2022, Defendants attempted to gain access to carafem's facility by pretending to be arriving for an appointment. Docket No. 180, p. 10. Defendants had no purpose for being in the medical office building that housed the clinic or attempting to access the clinic other than to interfere with the provision of health care. Id. R. Williams carried a concealed firearm with him. Id. at p. 14. When denied entrance to the Health Center, Defendants screamed, assaulted, threatened, and per B. Williams's words—"terrorized" staff and patients both inside and outside the Health Center. Id., pp. 10-14. They obstructed the hallway and the entrance of carafem, making the Health Center inaccessible to patients trying to receive care and prevented patients and staff from exiting. Id. Due to Defendants' actions, a patient who arrived for her appointment was unable to enter the Health Center and instead hid down the hall and around a corner to remain unseen and avoid being accosted by Defendants. Id., p. 14. Defendants refused to exit the building upon request by building security personnel and then by Mt. Juliet police. Id., p. 13. Defendants were ultimately escorted out of the building by Mt. Juliet police. Id. Defendants' threatening words and actions caused carafem to initiate lockdown procedures for the safety of its staff and patients, and as a result, patients, including those inside the clinic, faced delays in care and serious fear for their physical safety. Id., p. 15. Carafem patients and staff experienced intimidation, anxiety, and fear of imminent harm. Id. pp. 15-16.

Defendants, proceeding pro se, oppose the motion. Docket No. 183. Defendants argue genuine issues of material fact exist and that the evidence and or lack thereof is sufficient to

4

Case 3:22-cv-00565    Document 195    Filed 01/13/25    Page 4 of 18 PageID #: 1770

warrant a submission to a jury. Defendants do not contradict or refute the undisputed facts, and in fact, make admissions regarding their conduct toward Plaintiff. Specifically, Defendants argue there was no trespass because the building in question is a public, multi-use facility that is open to the public and hosts multiple buildings. Docket No. 183, p. 2. Defendants admit they attempted to aggressively intimidate carafem's employees and patients, and acknowledge that their "physical presence at the doors of [carafem] may be viewed as intimidating." Id., p. 3. They admit to "[d]isrupting" carafem through their actions, acknowledging that carafem's employees and patients could have experienced that disruption as "extremely aggressive." Id. at pp. 2-3. They argue no assault occurred because there is no evidence of a physical attack. Id., p. 3.

Plaintiff replied, reiterating its arguments. Docket No. 184.

### III.     LAW AND ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F. 3d 461, 464 (6th Cir. 2006). The court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)). "When opposing parties tell two different stories, [however,] one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [we need] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380, 127 S. Ct. 1769. However, "[f]acts that are not blatantly contradicted by [a video] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House*, 634 F. 3d

5

865, 870 (6th Cir. 2011).

As an initial matter, Defendants failed to submit a statement of material facts to which they contend a genuine issue exists, as required by Local Rule 56.01(c). As a result, for purposes of this motion, Defendants are deemed to have admitted all facts which were not specifically controverted. *Noeman v. Town of Mason*, 2022 WL 1797039, at *1 (W. D. Tenn. Mar. 14, 2022) (Because defendants failed to comply with Fed. R. Civ. P. 56 and Local Rule 56.1, the facts in plaintiff's statement of material were deemed admitted and undisputed for summary judgment purposes). The court will therefore treat the facts in Plaintiff's Statement of Material Facts as admitted by Defendants.

### A. FACE Act Claim

In Count I, Plaintiff asserts a claim under the FACE Act. The Freedom of Access to Clinic Entrances Act, ("FACE Act") was enacted in 1994 to provide protection to health care providers and patients. *See United States v. Gallagher*, 680 F. Supp. 3d 886, 890 (M.D. Tenn. 2023) ("[T]he FACE Act was, from its inception, particularly salient to the preexisting practice of individuals' interfering with access to medical facilities that provide procedures or treatments that result in the intentional termination of a pregnancy."). "The FACE Act … 'does not directly apply to speech, but rather prohibits three types of conduct—use of force, threat of force, and physical obstruction—which are not protected by the First Amendment.'" *Id.* (quoting *Norton v. Ashcroft*, 298 F. 3d 547, 552 (6th Cir. 2002)). The FACE Act prohibits a person who:

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. § 248(a)(1). Thus, by the statute's plain language, intentional interference with or

6

Case 3:22-cv-00565    Document 195    Filed 01/13/25    Page 6 of 18 PageID #: 1772

intimidation of a provider or recipient of reproductive health services by either a threat of force or a physical obstruction is sufficient to constitute a violation of the FACE Act.

The FACE Act defines "physical obstruction" as "rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). Courts have recognized that the FACE Act prohibits temporary or partial obstructions and attempts to obstruct—successful or not—that render passage to the facility "unreasonably difficult." *See, e.g., United States v Mahoney*, 247 F. 3d 279, 284 (D.C. Cir. 2001) (affirming an injunction under the FACE Act because "[t]he district court found that [the defendant] intentionally interfered with persons seeking reproductive care by physically obstructing access to the clinic, or at least attempting to do so."). Examples of acts of physical obstruction that are sufficient to create liability under the FACE Act include, inter alia, "standing in front of pedestrians as they try to enter a clinic; blocking clinic doors by standing directly in front of them; . . . participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance," *New York ex rel. Spitzer 10 v. Cain*, 418 F. Supp. 2d 457, 480 (S. D. N. Y. 2006) (citations omitted); kneeling intentionally in front of a door to block it and refusing to move when requested to do so by a security guard, *United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011); kneeling and praying before a door that was mainly used as an emergency exit, *Mahoney*, 247 F. 3d at 284 ; and trying to enter the clinic and having to be forcibly kept out of the clinic by clinic staff and police," *United States v. Gregg*, 32 F. Supp. 2d 151, 153 (D. N. J. 1998).

The uncontroverted evidence shows Defendants' conduct on July 28, 2022, constitutes "physical obstruction" for purposes of the Act. Defendants' bodies obstructed the Health Center door. Docket No. 180, pp. 11-13. Defendant Chavannes in particular spent several minutes directly

7

in front of the glass door leading into the Health Center, banging on the door and yelling through the intercom and the door from a very close range. Id., pp. 10-11. Video footage taken by B. Williams shows Chavannes's position, combined with the act of both Williams's pacing directly in front of the door, made it physically impossible for anyone to enter or exit the Health Center. Id. at p. 12. Defendants repeatedly refused to desist from their obstruction when ordered to do so by the medical building security personnel and the Mt. Juliet police officers. Id., pp. 12-13. One carafem patient attested that she was unable to enter the Health Center upon arriving for her appointment because of Defendants' presence in the hallway and instead hid down the hallway to avoid them. Docket No. 179, p. 3. Moreover, Defendants' presence blocked staff and patients inside the Health Center from leaving, requiring carafem to implement lockdown procedures, isolating staff and patients. Id. The undersigned concludes the uncontested evidence shows that that Defendants' actions rendered entrance to and egress from the Health Center unreasonably difficult and prevented patients from entering to receive services.

Under the Act, a "threat of force" is "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002). Courts consider a non-exhaustive list of factors when determining whether statements constitute threats of force, including: the reaction of the recipient of the threat and of other listeners; whether the threat was conditional; whether the threat was communicated directly to its victim; whether the maker of the threat had made similar statements to the victim in the past; and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence. *United States v. Dinwiddie*, 76 F. 3d 913, 925 (8th Cir. 1996), *cert. denied*,

8

519 U.S. 1043 (1996).

In this case, Defendants initially attempted to enter the clinic by Chavannes pretending to be a patient requesting to be seen for an appointment. Docket No. 179, p. 11. Once they were denied entrance, Defendants began to voice threats and intimidations. B. Williams stated that Defendants would "take this whole building down" and "terrorize this whole building." Id. at p. 14. Chavannes repeatedly yelled "You are murderers!" directly into the intercom at carafem staff, as well as directly at carafem staff standing on the opposite side of the glass door entrance. Id. at p. 18. Chavannes continued to yell while making aggressive hand gestures towards the glass door entrance and banging on the door. Id. at pp. 18-19. B. Williams paced the hallway in front of the health center entrance and yelled, "I cancel this building!" and "Carafem will be cursed to the ground." Id. at p. 18. She also yelled, "we send this building down to the pits of hell," and "[w]e find out the bank account, we find out the clientele in the name of Jesus, and we send it back to the pits of hell." Id. at p. 19. The yelling and threats coming from the Individual Defendants who had attempted to gain entry into the clinic, and were behaving aggressively, caused carafem staff to feel "panicked," "uneasy," "unsafe," "threatened," and at imminent risk of harm. Docket No. 179, p. 17. Carafem's Director of Security, who was posted at the Health Center's front door, attested that he "was keenly aware of the danger" and "very concerned that [he] would have to use force to protect [himself]." Id. at p. 19

The evidence demonstrates defendants' threats are consistent with those previously found by courts to have violated the FACE Act. *See, e.g., United States v. Smith*, 1997 WL 809998, at *1 (6th Cir. Dec. 30, 1997)(defendant's threat to physician, yelling "Your time has come," and "The time is near, violated the Act); *United States v. Unterburger*, 97 F. 3d 1413, 1415 (11th Cir. 1996) (defendant called clinic staff members "assassins"); *see also Pennington v. Meyers*, 2022

WL 656163, at *9 (D. Kan. Mar. 4, 2022) (denying motion to dismiss FACE Act claims because a reasonable finder of fact could conclude defendants' statement, "We will deliver the judgments of God upon you," constituted a threat of force). Moreover, Defendants' threat level was heightened by their continued attempts to gain access to the Health Center, their repeated refusal to leave at the request of security personnel and police, and their demands that the police arrest carafem instead of themselves. Docket No. 179, p. 12.

In evaluating a threat of force, "context is critical." *Planned Parenthood of Columbia/Willamette*, 290 F. 3d at 1078. The context surrounding Defendants' behavior on July 28, 2022, includes Defendants' efforts to gain access to the clinic, and staff and patients therein, as well as their history of aggressive and extremist demonstrations at carafem facilities and other reproductive health facilities. In fact, carafem was notified that Defendants were present at the OSA demonstration because these Defendants were historically known "to invade facilities and [be] extremely aggressive in their disruption." Docket No. 179, p. 12. Indeed, carafem's Director of Security recognized Defendants from their previous clinic invasions in Atlanta. Id. at p. 13. Defendants' prior history validated carafem's interpretation of their threatening words "as a serious expression of intent to inflict bodily harm." *See Planned Parenthood of Columbia/Willamette*, 290 F. 3d at 1077. Of further note, Defendants went to another reproductive health center shortly after being removed from carafem. Id. p. 13. There, after their second disruption of care that day, Defendants were arrested and R. Williams was found to be in possession of a handgun, which he had carried with him at the Health Center as well. Id. at p. 13.

Moreover, less than one month after the obstruction at carafem, B. Williams and Chavannes committed similar FACE Act violations at the Planned Parenthood of Brooklyn, which was recorded by B. Williams and shared on Facebook Live. Docket No. 180, p. 4.

10

The FACE Act defines "interfere with" as "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). "Intimidate" is defined as "to place a person in reasonable apprehension of bodily harm to him- or herself or to another." Id. § 248(e)(3).

Defendants' statements demonstrate their intent to intimidate carafem staff and patients and interfere with the provision of health services. When denied entry to the Health Center, B. Williams stated that Defendants would "take this whole building down" and "terrorize this whole building." Id. p. 10. When asked about the motivation for her statement, B. Williams answered, "When justice is done, it is a joy to the righteous but terror to evildoers. . . . The power of righteousness and prayer terrorizes the evildoers and workers of iniquity." Id. p. 10. It is undisputed that Defendants took the actions described above in order to prevent carafem staff from providing abortions and to prevent carafem patients from obtaining abortions. Id. p. 9, 14. As she was escorted from the medical building, B. Williams stated, "it's already done. Somebody's gotta answer." Id. p. 13. The court concludes the evidence shows Defendants intentionally attempted to and did intimidate and interfere with carafem and its staff and patients.

In fear of Defendants, carafem staff and patients were moved to a secure room within the Health Center. Id. p. 15. Carafem staff members felt "panicked," "uneasy," "unsafe" and "threatened." Docket No. 180, p. 17. One carafem patient felt the need to hide from Defendants instead of entering the Health Center so they could not accost her. Id. p. 16. As a result of Defendants' conduct, carafem initiated lockdown procedures that resulted in the interruption, delay, and cancellation of patient appointments. Id. p. 16. In sum, the uncontested evidence demonstrates Defendants violated the FACE Act and carafem is therefore entitled to summary judgment on this claim.

### B. Trespass

11

Case 3:22-cv-00565    Document 195    Filed 01/13/25    Page 11 of 18 PageID #: 1777

Count III asserts a state law claim for trespass. Trespass is "an unauthorized entry upon the land of another." *City of Townsend v. Damico*, 2014 WL 2194453, at *3 (Tenn. Ct. App. May 27, 2014). The elements for a claim of trespass are: (1) an intentional entry or holdover (2) by the defendant or a thing; (3) without consent or legal right. *Twenty Holdings, LLC v. Land S. TN, LLC*, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019). The Mt. Juliet Code of Ordinances provides that it is a trespass for any person "to fail to promptly leave the premises when requested to leave by the owner, lessee or person in charge of the property." Mt. Juliet Code of Ordinances § 16–43(b).

It is undisputed that Defendants entered the medical building and recorded and livestreamed themselves inside the building in front of the clinic entrance. Docket No. 180, p. 9. It is further undisputed that Defendants did not have consent or legal right to enter the building. Id.

In buildings containing businesses that provide services or sell goods to the public at large, trespass lies against an individual who enters a place of business or health care and proceeds to engage in "acts inconsistent with the purposes of the business or facility," *Alley v. Cleveland*, 1996 WL 605157, at *1 (Tenn. Ct. App. Oct. 23, 1996) (citing 75 Am. Jur. 2d § 48, p. 41). Here, Defendants admit they did not enter the building to seek medical care or to patronize any of the other businesses in the building, but in order to stop the provision of reproductive healthcare services and "terrorize" its patrons. Id. pp. 9-10. *Cf. Alley*, 1996 WL 605157, at *1 ("[W]here an individual has gained a right of entry but abuses his right after entry, trespass lies." (citing *Crawford v. Maxwell*, 22 Tenn. 476 (Tenn. 1842))). Moreover, the video taken by B. Williams shows that when building security officers asked Defendants to leave, they refused; instead of leaving when asked, Defendants remained and yelled inflammatory language and specific threats

to terrorize the building. Id. p. 12. The undersigned concludes these actions constitute common law trespass and trespass in violation of Mt. Juliet Code of Ordinances § 16-43(b) as a matter of law.

### C. Assault

In Count IV, Plaintiff asserts Defendants committed assault against carafem staff. "Assault occurs when 'a defendant intends to create an apprehension of harm in the plaintiff.'" *Kelley v. Root*, 2024 WL 323320, at *4 (Tenn. Ct. App. Jan. 29, 2024) (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S. W. 3d 352, 371 (Tenn. 2011 ("[b]ecause the evidence establishes that the Defendant intended to frighten the Plaintiff and perhaps others . . . , he committed the intentional tort of assault.")

Here, as previously discussed, the evidence demonstrates that Defendants intended to frighten and intimidate carafem staff and patients. In addition to Defendants' admissions as to their intent, the video evidence shows B. Williams stating her intent to "take the whole building down." Docket No. 180, p. 10. Chavannes banged on the glass door to the Health Center while repeatedly screaming at those inside through the door. Id. Chavannes also yelled "you are a murderer!" and "I want to go in!" through the intercom so that carafem staff and patients could hear her. Docket Id. p. 11. She and B. Williams both yelled loudly throughout the hallway in front of the clinic, ignoring the building security personnel's requests that they stop. Id. p. 12. B. Williams yelled "carafem will be cursed to the ground," and "we send this building down to the pits of hell." Id. at p. 12. When building security guards asked Defendants to leave, they refused and continued to scream threats. Id. at 12-13.

It is also undisputed that Defendants intentionally created an apprehension of harm by calling carafem's staff "murderers" and threatening to terrorize the building if Defendants were

13

not allowed into the facility. Docket No. 180, p. 11. Carafem staff and patients were moved to a secure room within the facility. Id. p. 15. Carafem's Director of Security "was keenly aware of the danger" posed by Defendants and "very concerned that [he] would have to use force to protect [himself]." Id. Carafem staff members felt "panicked," "uneasy," "unsafe" and "threatened," and believed they were at imminent risk of harm. Docket No. 180, p. 17. One carafem patient felt the need to hide from Defendants instead of entering the Health Center so they could not accost her. Id. p. 16. In the context of the ongoing OSA demonstration and carafem's institutional knowledge of Defendants' prior acts at carafem's various sites and other reproductive health service providers, Defendants' attempt to enter the clinic, including yelling, using aggressive hand gestures, and refusing to exit the medical building, all created a reasonable apprehension of harm in carafem staff and patients. Id. pp. 9-14.

Moreover, B. Williams threatened to "find out [carafem's] bank account, [ ] find out the clientele in the name of Jesus, and [ ] send it back to the pits of hell." Id. p. 12. Out of fear of Defendants, carafem staff altered their commuting routes to and from work out of concern that they were being followed home from work. Id. p. 18. Carafem's patients were "scared to come back" to carafem, and carafem's staff experienced nightmares and insomnia and required mental health assistance. Id.

The undisputed facts demonstrate that Defendants committed the intentional tort of assault against carafem's patients and staff, therefore carafem should be granted summary judgment on this claim.

### D. Nuisance

In Count VI Plaintiff asserts a state law claim for nuisance against Defendants. A private nuisance is "anything which annoys or disturbs the free use of one's property, or which renders its

14

Case 3:22-cv-00565   Document 195   Filed 01/13/25   Page 14 of 18 PageID #: 1780

ordinary use or physical occupation uncomfortable and extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Lane v. W.J. Curry & Sons*, 92 S. W. 3d 355, 364 (Tenn. 2002) (cleaned up).

Defendants' entrance into the medical building and attempt to enter the Health Center, discussed in detail earlier, caused carafem staff and patients to implement lockdown procedures for 35-45 minutes. Id. p. 15. Defendants' yelling in the hallway, coupled with the amplification of the yelling from the sidewalk, forced patients and staff in the clinic to yell in order to be heard and resulted in a feeling of being under attack. Id. pp. 7-8. Defendants' disruptive conduct, including yelling, and refusal to leave the medical building, caused at least one carafem patient to hide rather than enter the Health Center and receive medical care. Id. p. 12. Defendants' actions obstructed the reasonable and comfortable use of the facility by carafem patients and staff and interfered with carafem's ability to provide medical care. Id. at p. 14.

This is not disputed. Defendants admit their intent was to yell loudly enough in the hallway that carafem staff and patients inside the Health Center would hear them. Id. pp. 12-13. They admit they intended to disturb carafem's business, as well as that of the other tenants in the building. Id. p. 10. The undisputed facts therefore demonstrate that Defendants committed a nuisance, and thus carafem is entitled to summary judgment on this claim.

**E. Defendants' Motion to Dismiss**

Following the completion of briefing on Plaintiff's motion for summary judgment, Defendants filed an untimely motion to dismiss.[1] Docket No. 192. In light of the recommendation

---

[1] Defendants' motion fails to meet any of the deadlines set forth by the Federal Rules and this Court. This alone is sufficient for denial. By rule, any motion to dismiss was required to be filed before a responsive pleading. Fed. R. Civ. P. 12(b). By court order, any dispositive motions were

that Plaintiff's motion for summary judgment be granted, Defendants motions should be denied as moot.

### F. Plaintiff's Renewed Motion for an Order Deeming Certain Allegations in the Amended Complaint admitted.

Carafem filed its Amended Complaint on August 19, 2022. Docket No. 38. Carafem moved for entry of default against the remaining Defendants. Docket No. 136. The Clerk of Court granted the motion for default as to ATW, but denied it for the Individual Defendants. Docket No. 152. On May 2, 2024, Defendants filed three identical documents, each titled "Answer to Amended Complaint." Docket Nos. 163-65.

Plaintiff then moved to strike certain allegations, deem certain allegations admitted, or alternatively, to require the Individual Defendants to file an amended answer that complied with the Federal Rules. Docket Nos. 167-68. By order dated June 27, 2024, the Court granted the motion in part and ordered Defendants to "properly Answer the Amended Complaint following the instructions and guidance in this order as well as the amended case management order [] by July 15, 2024." Docket No. 172 at p. 4.

The Individual Defendants responded, acknowledging the Court's June 27, 2024, order,

---

due no later than August 26, 2024. Docket No. 170. Once a scheduling order deadline passes, a party must demonstrate good cause under Federal Rule of Civil Procedure Rule 16(b) for failure to adhere to the deadline. *See, e.g., Winter Enters., LLC v. W. Bend Mut. Ins. Co.*, 2019 WL 3413907, at *2 (S.D. Ohio July 29, 2019) (applying Rule 16(b)'s good cause standard to a party's "motion for judgment on the pleadings [filed] . . . over two months after the deadline for dispositive motions"). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F. 3d 613, 625 (6th Cir. 2002).

Defendants' motion fails this standard. Defendants did not file their motion to dismiss before their responsive pleading, nor did they file it by the dispositive motion deadline set by the Court. Nor have Defendants attempted to provide any excuse for their failure to meet court deadlines, or any explanation that would demonstrate good cause. As the record clearly illustrates, Defendants have repeatedly flouted deadlines and Court Orders in this litigation.

and averring that they submitted amended answers as required. Docket No. 176. However, no such Amended Answer has been filed with the Court, attached to the Individual Defendants' Response, or provided to opposing counsel.

The Court has authority to deem allegations admitted where they are not otherwise denied. *See AMI Stamping, LLC v. ACE Am. Ins. Co.*, 709 F. App'x 354, 359 (6th Cir. 2017) (district court did not err in deeming allegations in the complaint which were not denied to be admitted). Not only have the Individual Defendants failed to properly answer the Amended Complaint, when provided another opportunity, they defied the Court's order and failed to submit amended answers correcting prior pleading deficiencies. Accordingly, carafem's motion will be granted. The Court will deem each of carafem's cited allegations as set forth in their memorandum admitted, except as specified otherwise by Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that defendant's motion for summary judgment (Docket No. 178) be **GRANTED in its entirety.** In light of the undersigned's recommendation that Plaintiff's motion for summary judgment be granted, Defendants' motion to dismiss (Docket No. 192) should be **DENIED AS MOOT.** Plaintiff's renewed motion for an order deeming certain allegations in the Amended Complaint admitted (Docket No. 174) will be **GRANTED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report

and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

                                          _____
                                          **JEFFERY S. FRENSLEY**
                                          **United States Magistrate Judge**