IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **FEMHEALTH USA, INC., d/b/a CARAFEM,** | ) | |
| **Plaintiff,** | ) | **NO. 3:22-cv-00565** |
| **v.** | ) | **JUDGE CAMPBELL** **MAGISTRATE JUDGE FRENSLEY** |
| **RICKEY NELSON WILLIAMS, JR., BEVELYN Z. WILLIAMS, and EDMEE CHAVANNES,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff's motion for attorneys' fees, litigation costs, and expenses under 18 U.S.C. § 248(c)(1)(B). (Doc. No. 238). Defendants Rickey Williams, Jr., Bevelyn Z. Williams, and Edmee Chavannes (collectively, "Defendants"), acting pro se, filed responses in opposition (Doc. Nos. 243, 246), to which Plaintiff filed a reply (Doc. No. 247). Defendants have also moved to stay consideration of Plaintiff's motion for attorneys' fees pending resolution of the appeal. (Doc. Nos. 248, 250). The appeal has since been dismissed. (*See* Doc. No. 255). Accordingly, the motions to stay consideration of the motion for attorneys' fees are denied as **MOOT**.

For the reasons stated herein, Plaintiff's Motion for Attorneys' Fees (Doc. No. 238) is **GRANTED** with modifications.

## I. BACKGROUND

In July 2022, Plaintiff FemHealth USA, Inc., d/b/a carafem ("carafem") brought this action alleging Defendants violated the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18

U.S.C. § 248 *et seq*. (Doc. No. 1). Carafem was granted an emergency temporary restraining order on July 29, 2022, and a preliminary injunction on September 14, 2022. (*See* Doc. Nos. 9 & 66). The Court granted carafem's motion for summary judgment on February 12, 2025. (Doc. No. 199). Defendants filed a motion for relief from judgment and a motion to stay proceedings, both of which were denied. (*See* Doc. Nos. 202, 203, & 204). On January 23, 2026, final judgment was entered in favor of carafem in the amount of $5,000, jointly and severally, against Defendants. (Doc. No. 233).

Carafem now seeks an award of $314,574.63 in attorneys' fees and $6,067.47 in expenses. In support of the motion, Plaintiff filed a memorandum of law (Doc. No. 239), declarations of Plaintiff's attorney Sarah Miller (Doc. No. 238-1); Matthew Gibson, Director of Litigation Technology (Doc. No. 238-2); and two local attorneys (Doc Nos. 238-3, 238-4), as well as logs of attorney time and litigation costs (Doc. No. 238-1).

Defendants do not object to an award of attorneys' fees but argue the amount requested is unreasonable and should be reduced to between $110,000 to $125,000 (approximately 60% of the requested amount). (Doc. No. 243). Defendants also contend that Plaintiff is not entitled to recover the full amount of requested litigation costs. (*Id*.).

## II. LEGAL STANDARD

Plaintiff seeks an award of attorneys' fees, litigation costs, and expenses under 18 U.S.C. § 248(c)(1), which provides:

> **(c) Civil Remedies. –**
>
> **(1) Right of Action**
>
> **(A) In general.** -- Any person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action for the relief set forth in subparagraph (B), except that such an

> action may be brought under subsection (a)(1) only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services, and such an action may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship.
>
> **(B) Relief.** -- In any action under subparagraph (A), the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses. With respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation.

18 U.S.C. § 248(c)(1).

The Court's primary concern is that the requested attorneys' fee be "reasonable." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007), *abrogated on other grounds by Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). "A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Id.* (emphasis omitted) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

The starting point for determining the reasonableness of a requested fee is the "lodestar" analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by the reasonable hourly rate. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008). "But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection";

therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

"The determination whether hours were 'reasonably expended on the litigation' calls for the exercise of 'billing judgment.'" *Sinclair v. Meisner*, 185 F.4th 651, 656 (6th Cir. 2026) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (emphasis in original). Therefore, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791 (citing *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)).

"Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result." *Id*. at 792 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); and *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)). The factors considered include: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards

in similar cases. *Id*. The Sixth Circuit has recognized that, often, these factors are naturally blended into the reasonableness analysis. *Id. (citing Hensley*, 461 U.S. at 434, n.9).

## III. ANALYSIS

### A. Hourly Rate

Plaintiff was represented in this case by numerous attorneys from the law firm Bass, Berry & Sims PLC ("BBS"). Work on the case was performed by ten attorneys: Sarah Miller, Angie Bergman, Briana Sprick Schuster, David Esquivel, Alison Acker, Ashleigh Karnell, Margaret Dodson, Peter Rathmell, Mike Tackeff, and Emily Farmer. The team was also assisted by paralegals, Leann Lewis and Laura Bilbrey, as well as litigation technology professionals Darin Ipema and Jorge Molina.

- Sarah Miller is a litigation partner at BBS, and is counsel of record for carafem in this action. Sarah is an attorney licensed to practice law in Tennessee since 2014 and has practiced law since 2008. Her hourly rate at the time of this litigation ranged from $540 to $634.14.
- David Esquivel serves as the Pro Bono Partner at BBS. He received his law degree from Duke University School of Law in 1997. His hourly rate at the time of this litigation was $625.
- Angie Bergman is counsel at BBS, where she has worked since 2013. Her hourly rate at the time of this litigation ranged from $530 to $618.35.
- Briana Sprick Schuster is counsel at BBS. She earned her law degree from Harvard Law School in 2012. Her hourly rate at the time of this litigation ranged from $530 to $623.46.

- Allison Acker is a partner in the Litigation practice group at BBS. She earned her law degree from Harvard Law School in 2014. Her hourly rate at the time of this litigation ranged from $520 to $614.41.
- Margaret Dodson is a partner in the Litigation practice group at BBS. She earned her law degree from Vanderbilt University Law School in 2016. Her hourly rate at the time of this litigation was $485.
- Ashleigh Karnell is counsel at BBS. She earned her law degree from Belmont University College of Law in 2017. Her hourly rate at the time of this litigation was $575.20.
- Emily Farmer is an associate at BBS. She received her law degree from The George Washington University Law School in 2017. Her hourly rate at the time of this litigation was $625.
- Peter Rathmell was a junior associate at BBS during the pendency of this litigation. He earned a law degree from Tulane University Law School (2020). His hourly rate at the time of this litigation was $494.31.
- Michael Tackeff was a junior associate at BBS. He earned a law degree from Vanderbilt Law School in 2018. His hourly rate at the time of this litigation was $430.

The average billing rate of the individual attorneys claiming fees in this case is $474.90 for the group litigation (which generally occurred in 2022) and $557.53 for the litigation after that date, which involved only Defendants. (Doc. No. 239). Plaintiff states that the attorneys' stated hourly billing rates reflect reduced rates lower than the fees typically charged to clients. In

addition, the hourly rates are the rates in effect when the work was performed, rather than current rates. Plaintiff submits that the hourly rates of their attorneys are reasonable based on their skill and experience and the market in which they practice.

Defendants argue that the Court should reduce the hourly rates by 15% because the case was resolved on summary judgment and the parties engaged in limited discovery. (Doc. No. 243). The issues identified by Defendants are relevant to the reasonableness of the hours expended on the case but have little bearing on the reasonableness of the hourly rate. Based on the information provided and the Court's experience, the rates are at or below the market rates in this district for federal civil litigation. Accordingly, no reduction in the hourly rate is warranted.

**B. Reasonableness of Time Billed**

Plaintiff submitted the time log of attorney and paralegal hours totaling 566.8 hours worked between July 28, 2022, and September 9, 2022, and between October 30, 2023, and February 27, 2025 (Doc. No. 238-1). Plaintiff asserts that the hours expended are reasonable in light of the complexity of the litigation and the Defendants' litigation tactics. (Doc. No. 239). Plaintiff states that Defendants unnecessarily increased the number of hours spent on the case by filing "improper, untimely, repetitive, and dishonest motions and appeals." (*Id.*). Plaintiff acknowledges the relatively large number of attorneys and legal professionals who billed time on this matter, and asserts that this reflects the scope, duration, and complexity of the litigation. Plaintiff notes that the claims against the other defendants were resolved through settlement in 2023. (*See* Doc. No. 135). Plaintiff asserts that the claims against Defendants likely could have been resolved at that time, but Defendants refused to continue negotiations. (*Id.*). Lastly, in anticipation of an argument concerning ability to pay, Plaintiff submits a screenshot of a fundraising page seeking donations

for Defendant Bevelyn Williams. (*See* Doc. No. 238-2). The page indicates that the fundraiser raised over $345,000. (*Id.*).

Defendants argue that the hours expended on the litigation are unreasonable particularly in light of the $5,000 judgment awarded. (Doc. No. 243 & 246). Defendants argue that Plaintiff overstaffed the case, resulting in hours unnecessarily spent on internal coordination and duplicative work. Defendants also argue Plaintiff's attorneys performed unnecessary tasks, including preparation for a trial that never occurred. (*Id.*). Defendants assert that a reasonable fee is between $110,000 and $125,000. (Doc. No. 243). Defendants do not dispute that Bevelyn Williams was the beneficiary of an online fundraiser but argue that ability to pay has no bearing on the lodestar calculation.

Here, it is apparent that Plaintiff's work on this litigation was successful, especially considering the unnecessary complications and frustration caused by Defendants' conduct throughout the litigation. Even considering that Defendants' conduct dramatically increased the time spent on the case, counsel for Plaintiff failed to exercise good billing judgment with regard to case staffing and the time spent on particular tasks. For example, ***ten*** attorneys worked on the case when the case reasonably required a fraction of that number. In addition to the unnecessary participation by multiple attorneys in hearings and conference calls, the overstaffing resulted in multiple levels of review and time spent on coordination that would have been unnecessary or dramatically reduced had the case been more leanly staffed. All of this leads to the inescapable conclusion that BBS's requested fees are patently unreasonable. Moreover, a review of the time log shows that some of the hours spent on motions that were never filed or on matters involving other defendants. For example, work done by Laura Bilbrey from August 23, 2022, to August 26, 2022, concerned service on At the Well, a defendant that was later voluntarily dismissed. (*See*

Doc. No. 219). The time log also includes entries regarding sentencing, which was not possible in this civil case. Finally, concerning the overall reasonableness of the fee award, the Court notes the disparity between the fees requested and the $5,000 judgment. This was, of course, not the only relief awarded in this case. Plaintiff was also granted a preliminary injunction. But that award took place at the inception of the case. The bulk of time billed occurred after entry of the preliminary injunction.

In consideration of these factors, Plaintiff's submissions, and the case record as a whole, the Court finds an across-the-board reduction of 50% in the total fee award is warranted. Therefore, the total attorneys' fee award requested – $314,574.63 – will be reduced to $157,287.32.

**C. Litigation Costs**

As the prevailing party, "the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses." 18 U.S.C. § 248(c)(1)(B).

Plaintiff seeks recovery of $6,067.47 in litigation costs and expenses, which includes fees for service of process and delivery costs. Counsel for Plaintiff states that costs are only those costs associated with the non-settling defendants. (Miller Decl., Doc. No. 238-1 ¶ 20). In addition, Plaintiff states that it has not sought reimbursement for other typical expenses, such as phone charges, copying, or legal research. Defendants' sole argument against these expenses is that the amounts expended are high compared to the number of Defendants. Defendants do not identify any cost they contend is extraneous.

It appears to the Court that the expenses sought are reasonable and necessary. Accordingly, Plaintiff is entitled to recover **$6,067.47** in litigation costs and expenses.

## IV. CONCLUSION

For the reasons stated above, Plaintiff is hereby awarded a total of **$157,287.32** in attorneys' fees and a total of **$6,067.47** in litigation costs and expenses.

It is so **ORDERED.**

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE